STUART F. LISS *vs.* VLADIMIR STUDENY.

Middlesex. December 3, 2007. - January 23, 2008.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.

*Practice, Civil,* Summary judgment. *Contract,* Performance and breach,
.   Compensation of attorney, Implied covenant of good faith and fair dealing.
*Attorney at Law,* Attorney-client relationship, Compensation, Contingent
fee agreement. *Damages,* Quantum meruit.

In an action brought by an attorney seeking legal and equitable recovery from
a former client for legal services performed in connection with a contingent
fee contract, the attorney failed to demonstrate that the client had commit-
ted a breach of the express terms of the contract (by failing to advance ad-
ditional funds for litigation expenses in the underlying case) [476] or of
the implied covenant of good faith and fair dealing (by failing to advance
funds, asserting that he lacked the financial resources to proceed with the
case, and failing to cooperate with the attorney in attempting to settle the
case) [476-478]; moreover, even assuming a violation of the implied
covenant, the attorney could not recover under either contract law or a
theory of quantum meruit, where the contingency itself (i.e., a favorable
result in the underlying case against the client's former employer) had
never occurred [478-482].

CIVIL ACTION commenced in the Superior Court Department on
May 21, 2004.

The case was heard by *Paul A. Chernoff,* J., on a motion for
summary judgment.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Stuart F. Liss,* pro se.

*Valeriano Diviacchi* for the defendant.

*Terence M. Troyer,* Assistant Bar Counsel, for Bar Counsel,
amicus curiae, submitted a brief.

SPINA, J. Stuart F. Liss seeks legal and equitable recovery
from Vladimir Studeny for legal services performed by Liss in
connection with a contingent fee contract. A judge in the Super-
ior Court granted Studeny's motion for summary judgment on

the ground that Liss was not entitled to recovery on a contingent fee contract or in quantum meruit where the contingency never occurred. Liss appeals from the judge's order, and we transferred the case here on our own motion. We now affirm.

1. *Background.* When reviewing a grant of summary judgment, where all material facts have been established, we view the evidence in the light most favorable to the nonmoving party. *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991). We summarize the undisputed material facts.

Liss agreed to represent Studeny in his wrongful termination claim against his former employer. In January, 1998, the parties entered into a contingent fee contract under which Liss would receive a contingent fee based on amounts collected in the underlying case against the former employer.[1] The contract provided that Studeny "shall not be liable to pay compensation otherwise than from amounts collected for him by [Liss], except as follows: Payment of [Liss's reasonable] expenses and disbursements . . . ; otherwise None except from amounts collected." In addition, the contract provided that Studeny already had advanced Liss $2,500 toward expenses and disbursements; that "[w]hen the balance of the foregoing advance is less than $500.00, [Studeny] shall pay to [Liss] a further advance in an amount to be determined by [Liss] and [Studeny] at the time based upon an estimate of future expenses and disbursements likely to be incurred by [Liss]"; and that "[f]ailure to pay said expenses and disbursements promptly upon request will constitute a material breach of this agreement by [Studeny] and will be grounds for [Liss] to withdraw from any pending litigation and otherwise to discontinue his services . . . ."

In July, 1998, Liss and Studeny had several conferences in which they discussed the estimated cost of litigation and of preparation for litigation. In those conferences, they eventually estimated a preliminary budget of $9,000. On July 13, they established that Studeny could raise that $9,000 in the following

---

[1] The parties originally entered into a contract in September, 1996. The parties revised this contract, and the revised contract, the one at issue in this case, is dated January 8, 1998.

manner: $2,000[2] from funds that Studeny already had advanced to Liss, $2,500 from the settlement of an automobile accident case involving Studeny's wife, and $4,500 from cash advances on Studeny's credit cards. Sometime between July 13 and 15, Studeny told Liss that he wished to drop the case against his former employer and wished to discuss how he might drop it. In response to Studeny's request to drop the case, Liss responded that he already had invested in the case legal services with a fair billable value of over $11,000, that a judge possibly might order Studeny to pay the fair value of Liss's legal services, and that it might become necessary for Liss to recover the "fair compensation for [his] legal services" unless Studeny agreed to a compromise solution by which he would pay Liss $5,000. Studeny agreed to proceed with the case. On or about July 29, Studeny advanced Liss an additional $4,000.

On July 7, 1999, Liss drafted a settlement demand letter to be sent to Studeny's former employer and asked Studeny to review the letter and to provide him certain additional information (an itemized list of Studeny's medical and drug expenses) so that Liss could calculate the amount that they should demand. Studeny did not provide that information, and Liss never served a demand letter on the former employer.

On April 4, 2000, Liss requested in writing that Studeny provide an additional $4,000 for expert witness fees, for a video stenographer, and for expenses associated with the trial itself. The current expense fund, Liss wrote, was insufficient to prepare for trial. In response, Studeny informed him that he would not provide these additional funds. Liss answered that he could not properly present the case at trial operating under the financial restrictions set by Studeny. By motion entered April 14, 2000, Liss sought to withdraw as Studeny's counsel of record. The motion was allowed. Liss then urged Studeny to take possession of the legal file on his case and the $1,874 remaining from the money that Studeny had advanced for legal expenses and disbursements. Studeny later retrieved the file and the money.

Studeny, proceeding pro se, survived his former employer's motion for summary judgment but, at trial, did not prevail in his

---

[2]Studeny originally advanced Stuart Liss $2,500. The $2,000 is what remained from those funds.

unlawful discrimination claim. Studeny did not recover any money in the case against his former employer.

Thereafter, Liss filed a complaint alleging that Studeny was in breach of their contingent fee contract and that he therefore owed him $39,360. Studeny moved for summary judgment, and the judge allowed the motion on the ground that Liss would have been entitled to recovery only if Studeny had been successful in the underlying case against his former employer. Liss appealed from the ruling.

2. *Breach of express terms of contract.* Liss argues that Studeny is in breach of the terms of the contingent fee contract because Studeny failed to advance additional requested funds as required under the terms of the contract. The contract, however, does not state that Studeny was required to advance such funds whenever Liss might request them. It states that a future advance would be determined when the previously advanced funds dropped below $500. Here, the funds did not drop below that mark. There was still $1,874 in Studeny's account at the time of Liss's withdrawal. Furthermore, even if the funds had fallen below $500, the contract did not state that Liss could dictate how much money Studeny must advance to him. Instead, the contract states that the amount of the future advance was to be determined by Liss *and* Studeny.

In addition, the contract states that Liss and Studeny would determine the amount of the future advance "at the time," namely, at the time "[w]hen the balance of the foregoing advance is less than $500.00." Liss argues that Studeny and he had agreed in July, 1998, that Studeny would advance to him $9,000. That was not, however, expressly required by the contract; nor was it determined by the parties at a time that the balance of the foregoing advance had dropped below $500. Liss does not argue that these discussions concerning the $9,000 amounted to a new contract or to a novation or modification of their previous contingent fee contract.

Liss has not shown that Studeny is in breach of the express terms of the contract by failing to advance additional funds.

3. *Breach of covenant of good faith and fair dealing.* Liss contends that Studeny is in breach of the contract's implied covenant of good faith and fair dealing by reason of (1) his

failure to advance Liss necessary litigation expenses, (2) his erroneous claim that he lacked the financial resources to proceed with the case, and (3) his failure to cooperate with Liss in the underlying case.

Every contract is subject to an implied covenant of good faith and fair dealing. *Kerrigan* v. *Boston*, 361 Mass. 24, 33 (1972). The purpose of the covenant "is to guarantee that the parties remain faithful to the intended and agreed expectations" of the contract, *Uno Restaurants, Inc.* v. *Boston Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004), and to ensure that "neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Anthony's Pier Four, Inc.* v. *HBC Assocs.*, 411 Mass. 451, 471-472 (1991), quoting *Drucker* v. *Roland Wm. Jutras Assocs.*, 370 Mass. 383, 385 (1976). The covenant "may not . . . be invoked to create rights and duties not otherwise provided for in the existing contractual relationship." *Uno Restaurants, Inc.* v. *Boston Kenmore Realty Corp.*, *supra* at 385. "The scope of the covenant is only as broad as the contract that governs the particular relationship." *Ayash* v. *Dana-Farber Cancer Inst.*, 443 Mass. 367, 385, cert. denied sub nom. *Globe Newspaper Co.* v. *Ayash*, 546 U.S. 927 (2005).

Notwithstanding Liss's claim that Studeny's failure to advance $4,000 of additional funds violated the covenant, the contract did not require Studeny to advance such money. Indeed, the contract stated that the parties would determine the amount of any additional funds, but not until the level of funds had fallen below $500. The existing funds had not yet fallen below that level when Liss requested additional funds. There is no evidence that Studeny acted in bad faith[3] by refusing to advance additional funds when he was neither required to provide them nor expected even to determine the amount of such an advancement at the time of Liss's request. See *id.*

---

[3]Liss argues, and Studeny denies, that Studeny acted in bad faith. However, to establish a violation of the covenant, "[t]here is no requirement that bad faith be shown." Rather, one must show a lack of good faith. *Nile* v. *Nile*, 432 Mass. 390, 398-399 (2000). See *Larson* v. *Larson*, 37 Mass. App. Ct. 106, 109-110 (1994). In any event, for the reasons stated above, there is neither evidence that Studeny acted in bad faith nor evidence that he lacked good faith in his failure to advance the requested funds and in his assertion that he lacked money.

There is no merit to Liss's claim that Studeny's assertion that he lacked funds was in bad faith. Studeny's statement is irrelevant for a determination of bad faith on the contract because he was not required to advance those additional funds regardless of the state of his finances.

Liss next argues that Studeny acted in bad faith when he failed to cooperate in Liss's preparation of a settlement demand letter, specifically, when he failed to provide Liss with an itemized list of Studeny's medical and drug expenses, as Liss requested. Taking the facts in the light most favorable to Liss, we will assume, without deciding, that Studeny's failure to provide this information breached an implied term of the contingent fee contract and the contract's implied covenant of good faith and fair dealing. In the event of such a breach, there exists a number of possible remedies, including, but not limited to, the following. First, Liss might have sought approval to withdraw from the contract. Here, he did obtain approval to withdraw. Second, Liss might have sought to recover on the contingent fee contract had the contingency actually occurred, but the contingency did not occur, and Liss could therefore not recover on the contract.[4] Third, Liss might have sought, as here, to recover in quantum meruit. We turn now to Liss's claim in quantum meruit.

4. *Quantum meruit.* The parties do not dispute that an attorney may recover under a theory of quantum meruit arising out of a contingent fee contract. See *Opert* v. *Mellios*, 415 Mass. 634, 636-637 (1993); *Salem Realty Co.* v. *Matera*, 10 Mass. App. Ct. 571, 576-578 (1980). They do, however, dispute whether Liss conferred a benefit that would entitle him to recovery in quantum meruit, and they disagree regarding when the right to recover on a theory of quantum meruit accrues.

Studeny argues that Liss is not entitled to recover in quantum meruit because Liss conferred no "measurable benefit" on

[4]Because failure of the contingency precludes recovery on the contract in this case, see Restatement (Third) of the Law Governing Lawyers § 35 (2) (2000), we decline to address whether an attorney may ever collect on a contingent fee contract after the client has discharged the attorney or the attorney has withdrawn because of the client's breach. See *Opert* v. *Mellios*, 415 Mass. 634, 636-637 (1993); *Salem Realty Co.* v. *Matera*, 384 Mass. 803, 804 (1981).

Studeny, that is, because he recovered nothing in his lawsuit against his former employer. Assuming that one must confer a "measurable benefit" to be entitled to quantum meruit recovery, we conclude that Liss provided such a benefit. Even if ultimately unsuccessful, an attorney's competent efforts to advance his client's cause are a measurable benefit to the client. They are a benefit in that the attorney performs a service on behalf of the client, and they are measurable in that the court may determine the fair and reasonable charge for an attorney's services by considering, among other things, the time spent on the matter and the prices usually charged by other attorneys for similar services. *Cummings* v. *National Shawmut Bank,* 284 Mass. 563, 569 (1933) (setting forth factors to determine fair and reasonable charge for attorney's services). Here, Liss's efforts were a benefit to Studeny because they provided a basis on which he was able to take his claim to trial.

The parties also disagree about when an attorney's right to recover in quantum meruit accrues. Liss argues that his right to recover in quantum meruit accrues at the time of the breach and does not depend on recovery in the underlying case against Studeny's former employer. Studeny, on the other hand, argues that any such right of recovery on the contingent fee contract does not accrue until the occurrence of the contingency, namely, until a favorable result in the underlying case.

Quantum meruit "is a claim independent of an assertion for damages under the contract, although both claims have as a common basis the contract itself." *J.A. Sullivan Corp.* v. *Commonwealth,* 397 Mass. 789, 793 (1986). It is an obligation that arises under quasi contract theory in which an obligation is "created by law 'for reasons of justice, without any expression of assent and sometimes even against a clear expression of dissent.' " *Salamon* v. *Terra,* 394 Mass. 857, 859 (1985), quoting 1 A. Corbin, Contracts § 19 (1963). "The fact that a person has benefited from another 'is not of itself sufficient to require the other to make restitution therefor.' " *Keller* v. *O'Brien,* 425 Mass. 774, 778 (1997), quoting Restatement of Restitution § 1 comment c (1937). "The underlying basis for awarding quantum meruit damages in a quasi-contract case is unjust enrichment of one party and unjust detriment to the other party." *Salamon* v.

*Terra, supra.* The injustice of the enrichment or detriment equates with the defeat of a person's reasonable expectations. *Id.* While a party does not recover on the contract itself under quantum meruit, a court may look to the terms of the underlying contract to help determine appropriate recovery under quantum meruit. See *Divito* v. *Uto,* 253 Mass. 239, 242-243 (1925). See *J.A. Sullivan Corp.* v. *Commonwealth, supra* at 796-798 (affirming trial judge's computation of quantum meruit recovery where judge looked in part to provisions of underlying contract); *Salem Realty Co.* v. *Matera, supra* at 576 ("In applying a quantum meruit standard, the terms of the abrogated [contingent] fee agreement provide helpful guidance . . ."). See also *Tillman* v. *Komar,* 259 N.Y. 133, 135 (1932) (after cancellation of contingent fee contract, terms of contract, although not determinative, may be considered to ascertain quantum meruit).

In the present case, the terms of the contract would not have led a reasonable person to believe that Studeny would be liable under quantum meruit where the contingency did not occur in the underlying case. The contract explicitly stated that Studeny would not be liable to pay compensation "except from amounts collected." Furthermore, the contract nowhere stated that Studeny may be liable to Liss even where no amounts are collected. It would, therefore, run counter to the reasonable expectations of the parties to require compensation where no amounts are collected. See *Salamon* v. *Terra, supra* at 859. In addition, it would run counter to Mass. R. Prof. C. 1.5 (c) (4), 426 Mass. 1315 (1998), which requires a contingent fee contract to state "whether and to what extent the client is to be liable to pay compensation otherwise than from amounts collected for him or her by the lawyer."

Issues of practical applicability also urge us to grant quantum meruit recovery as a general rule only in situations where the contingency has occurred. To take a simple but contrasting example, a construction contract may require one hundred units to be built to reach the contract's desired goal. If the client fires the builder after the builder had made ninety units, a fact finder will have a practicable method to determine the builder's recovery under quantum meruit because the judge can determine how close to the desired result the builder brought the matter. See

*J.A. Sullivan Corp.* v. *Commonwealth, supra* at 796; *Divito* v. *Uto, supra* at 242-243. Similarly, a construction contract may require approximately one hundred hours of labor to reach its desired goal. If the client fires the builder after the builder has worked for eighty hours, a fact finder here too will have a practicable method to determine the builder's recovery under quantum meruit because the judge can determine how close to the desired goal the builder brought the matter. A contingent fee contract, by contrast, does not require any certain amount of labor or hours worked to reach its desired goal. It only requires the occurrence of the contingency. If the client discharges the attorney after the attorney has worked for eighty hours and the case is ultimately unsuccessful, the fact finder will not have a practicable method to determine the attorney's recovery under quantum meruit because it cannot fairly be determined how close to the desired goal (i.e., a successful outcome in the case) the attorney brought the matter.

As a general rule, the court will not grant quantum meruit recovery arising from a contingent fee contract where the contingency has not occurred. We do not, however, foreclose the possibility that an attorney may recover in quantum meruit in certain particularly compelling situations where the contingency does not occur.[5]

In the present case, there is no evidence that Studeny used Liss's services without intending that the contingency occur. That is, Studeny did not defeat Liss's reasonable expectation that he was using Liss's services to bring about the contingency on which Liss might be compensated. See *Salamon* v. *Terra, supra* at 859 (quantum meruit may be appropriate where reasonable expectations are defeated). In fact, the undisputed evidence demonstrates that, even after Liss had withdrawn from the case, Studeny defeated his employer's motion for summary judgment and continued to litigate his case to the end of trial in an effort to achieve the contingency. His attorney may have wished for Studeny to invest more money and effort in the litigation of the case, but the fact that Studeny expected to pursue his claim at

---

[5]Liss argues that *Eliot* v. *Lawton*, 7 Allen 274 (1863), supports the argument that a right to recover arises at the time of a breach of a contingent fee contract. That case, however, does not involve the question when the right to recover on a contingent fee contract arises. Its holdings are inapplicable here.

the least possible cost does not establish that he intended the contingency not to occur. Given these facts, Liss's right to recover in quantum meruit would not have accrued until the occurrence of the contingency. Because the contingency did not occur, his right to recover never accrued. Liss may not recover in quantum meruit.

Liss contends that the judge erred in granting summary judgment because there are numerous genuine issues of material fact. A fact is "material" only if it might provide a basis for a fact finder to find in favor of the party. *Carey* v. *New England Organ Bank*, 446 Mass. 270, 278 (2006). We have reviewed the record and conclude that there is no dispute of material fact. Any dispute involves facts that are inconsequential. Summary judgment for Studeny was appropriate.

*Judgment affirmed.*