Lemire, James R., J.
The plaintiff, Patrice David (“David”), brings this action against the defendants, the Town of Webster (“Town”), Thomas W. Brousseau (“Brousseau”), and Melissa Hubert (“Hubert”), alleging that the Town is liable to David for unjust enrichment and quantum meruit, that Brousseau is liable for breach of contract, breach of fiduciary duty, and conflict of interest, and that Hubert is liable for breach of contract, unjust enrichment, and quantum meruit. The defendants each move for summary judgment. For the reasons stated below, the defendants’ motions for summary judgment are ALLOWED.
BACKGROUND
The relevant undisputed material facts as established by the summary judgment record are as follows.[2] On December 11, 2003, seller David entered into a Purchase and Sale Agreement with buyer Hubert for real estate located at 9 Juniper Lane, Webster, Massachusetts. January 15, 2004 was set as the closing date. At the time of the sale, the property was not connected to the Town sewer and utilized a private septic system. Between the execution date and the closing date, David was unable to comply with Title V of the State Environmental Code,[3] as referenced in paragraph twenty-five of the agreement. David .informed Hubert about the septic system’s failure to pass Title V requirements. Despite this problem, Hubert wished to proceed with the sale. Rather than reducing the price of the property, David and Hubert planned to set aside money from the sale to use toward connecting the property to the Town sewer.
David and Hubert entered into a one-page Escrow Agreement dated January 15, 2004. Hubert’s attorney, Brousseau, had drafted the agreement, but had not forwarded a copy to David prior to David’s visit to his office on the closing date. The recital of the Escrow Agreement stated that David was “unable to provide a Title V Certificate to [Hubert], as required under the Massachusetts Laws, due to non-completion of the septic system, prior to the transfer and the system cannot be corrected prior to the transfer, due to the winter conditions.” The Escrow Agreement provided that
1.The Seller shall, at her expense, tie in to the Town sewer lines in complying with all state and municipal laws and codes. The Seller shall be responsible for all expenses and costs, including all municipal permits, inspections, police road details, all equipment and work, as set forth in the proposal of M&M Excavators Co. Inc., dated December 31, 2003, and shall restore the premises . . . The Seller shall be responsible for any costs necessary for the work if in excess of the estimate of M&M Excavators Co., Inc. Said work shall be completed no later than May 1. 2004.
2. If prior to the completion of the Title V, the Seller agrees to pay for any necessary pumping of the septic system, if needed.
3. The Sum of $38,000.00 shall be held in escrow, by the Buyer’s attorney, Thomas W. Brousseau, pending completion of all necessary work as set forth above. In the event that the costs of said work are in excess of the holdback sum, the Seller shall be responsible for any extra cost. In the event that the costs are less than the holdback sum, the Seller shall be entitled to the balance, immediately upon completion of work.
David accepted the sewer tie-in proposal from M&M Excavators Co., Inc. (“M&M”) referenced in the Escrow Agreement on January 15, 2004. David had consulted the contractor around the end of December 2003. The proposal explicitly required a fifty percent payment at the start of the project and the remainder upon completion.
*263 In March 2004, David discovered the possibility of the Town installing the sewer line for all of Juniper Lane, after having approached the Town Administrator Robin Leal (“Leal”). David subsequently met with Leal and Sewer Superintendent Phillip Robert (“Robert”), who informed David that Town had been considering the extension of sewer service to that area. Robert also informed David that the Town would have to approve funding before the project could be undertaken.
Hubert extended the May 1,2004 deadline specified in the Escrow Agreement to allow David to raise the issue of the Town installing the sewer connection to Juniper Lane at the May 10, 2004 Town meeting.[4] On May 11, 2004, the day after the Town meeting, David, through Gorski, requested an additional extension to July 1, 2004 because the Town had postponed considering the Article to install the sewer line until June 21, 2004.[5] Brousseau responded to Gorski by letter dated May 11, 2004 that Hubert refused to grant a further extension and intended to proceed with the installation of the sewer connection. Brousseau also informed Gorski that he was sending M&M one-half of its estimate, namely $18,400, to begin the sewer work. Brousseau retained the remaining funds in escrow.
By letter dated May 11, 2004, David requested Leal to withhold any sewer permits for the property until the Town decided the pending Article. Leal responded on June 7, 2004 that, with the advice of the Town Counsel, the Town found no basis to withhold issuing any permits for the property. On about June 10, 2004, M&M applied for a sewer connection permit to install a main line to the Town sewer. The Town issued this permit on June 14, 2004.
At the June 21, 2004 Town meeting, the Town passed an amended Article to install a sewer connection for Juniper Lane and an adjoining street.[6] Several days later, the Town issued a separate permit to M&M on June 24, 2004 to connect the property to the recently installed main sewer line. In July 2004, Brousseau made the second payment to M&M from the escrow funds.
In October 2004, David’s current attorney requested that the Town reimburse David for the sewer installation. Leal subsequently responded that the Town vote for the project did not include reimbursing “a resident who was sewering due to personal reasons.” Sometime later, David pursued the issue of reimbursement with Leal’s successor, Dana Keenan (“Keenan”).
DISCUSSION
Summary judgment is appropriate when the summary judgment record shows that “there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Mass.R.Civ.P. 56(c): DuPont v. Comm'r of Corr., 448 Mass. 389, 397 (2007). A fact is “material” if it would affect the outcome of the suit. Carey v. New England Organ Bank, 446 Mass. 270, 278 (2006); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is “genuine” where a reasonable finder of fact could return a verdict for the non-moving party. Flesr v. Technical Commc’ns Corp., 410 Mass. 805, 809 (1991), citing Anderson, 477 U.S. at 252. The moving party bears the initial burden of demonstrating the absence of a triable issue and that the summary judgment record entitles it to judgment as a matter of law. Ng Bros. Constre., Inc. v. Cranney, 436 Mass. 638, 644 (2002), citing Pederson v. Time, Inc., 404 Mass. 14, 17 (1989); Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991). The moving party may satisfy its burden by submitting affirmative evidence that negates an- essential element of the opposing party’s case or by demonstrating that the non-moving party has no reasonable expectation of proving an essential element of his case at trial. Flesner, 410 Mass. at 809; Kourouvacilis, 410 Mass. at 716 (adopting reasoning contained in Celotex Corp. v. Catrett, 477 U.S. 317 (1986), that “the burden on the moving party may be discharged by ‘showing’ . . . that there is an absence of evidence to support the nonmoving party’s case”). In reviewing a motion for summary judgment, the court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in his favor. Jupin v. Kask, 447 Mass. 141, 143 (2006), citing Coveney v. President & Trs. of the Coll. of the Holy Cross, 388 Mass. 16, 17 (1983); see Simplex Techs., Inc. v. Liberty Mut. Ins. Co., 429 Mass. 196, 197 (1999). If the moving party has carried its burden, and the non-moving party has not responded with specific facts to establish a genuine, triable issue, the court grants the motion for summary judgment. Cmty. Nat’l Bank v. Dawes, 369 Mass. 550, 554 (1976); see Ng Bros., 436 Mass. at 644 (stating that, even where the facts are disputed, “summary judgment is still available if the party with the burden of proof at trial . . . fails to present in the summary judgment record, taking everything it says as true and drawing all reasonable inferences in its favor, sufficient facts to warrant a finding in its favor”), citing White v. Univ. of Mass. at Boston, 410 Mass. 553, 557 (1991).
I. The Plaintiffs Breach of Contract Claims Against the Defendants Brousseau and Hubert
The parties do not dispute that an escrow was created. ‘To deposit a sum in escrow is simply to deliver it to a third party to be held until the performance of a condition or the happening of a certain event.” Kaarela v. Birkhead, 33 Mass.App.Ct. 410, 412 (1992), citing 2 Corbin Contracts §§414-415 (1950 ed.). See also, Frontier Enter., Inc. v. Anchor Co. of Marblehead, Inc., 404 Mass. 506, 510 (1989) (“An escrow is created when one party to a transaction delivers a sum to a third party, the escrow agent, for him or her to hold until the performance of a condition and then to deliver to the other party to the transaction” (citations omitted)).
*264 The interpretation of the Escrow Agreement, as a contract, “presents a question of law for the court, except to the extent disputed facts bear upon such interpretation.” USM Corp. v. Arthur D. Little Sys., 28 Mass.App.Ct. 108, 116 (1989). The court considers the words of an agreement in the context of the entire agreement rather than in isolation. Gen. Convention v. Mackenzie, 449 Mass. 832, 835 (2007) (citations omitted). “The object of the court is to construe the contract as a whole, in a reasonable and practical way, consistent with its language, background, and purpose.” Id. (citations omitted). “A contract is to be construed to give reasonable effect to each of its provisions.” Sullivan v. Southland Ins. Co., 67 Mass.App.Ct. 439, 442 (2006), citing J.A. Sullivan Corp. v. Commonwealth, 397 Mass. 789, 795 (1986).
The plaintiff claims that Brousseau and Hubert breached the Escrow Agreement, the former by disbursing the funds to the contractor and the latter by instructing Brousseau to do so. According to the plaintiff, the Escrow Agreement did not authorize any withdrawal of the funds, but merely permitted the holding of the funds “pending completion of all neces-saiy work.” Brousseau claims that he complied with the express terms of the Escrow Agreement and that he would have acted in breach of the Escrow Agreement had he held onto the funds beyond the latest date for performance agreed upon by Hubert and David. Hubert claims that the release of escrow funds did not constitute a breach of contract where David had agreed to bear the financial responsibility for correcting the property’s septic system problem.
That the Escrow Agreement explicitly states, in part, that Brousseau “hold” the deposited sum in escrow “pending completion” of all necessary work is of no avail to David. The overall language, background, and purpose of the agreement indicated that the deposited funds were to be used to pay M&M to install a sewer connection for the property. Other provisions in the agreement explicitly obligated David to connect the property to the Town’s sewer lines at her expense and made her responsible for the work and costs set forth in M&M’s proposal and for any extra costs. The fact that David was not provided an advance copy of the agreement prior to its execution bears no effect on the outcome here. David had understood the sewer work for the property to be her responsibility. Clearly, the purpose of the agreement was for the sewer connection. For the sewer work to begin, M&M had to be given an upfront payment of half its estimate, as required in the proposal accepted and procured by David. A reasonable construction of the Escrow Agreement, therefore, is that the funds were to be kept in escrow in anticipation of connecting the property to the Town sewer, which M&M was to perform pursuant to its proposal.
In agreeing to extend the original deadline in the agreement to the date of the first Town meeting in May, Hubert indicated that the issue of the Town installing the sewer connection was to be addressed and decided at “this meeting only with no continuations or extensions.” The plaintiff fails to present evidence showing that Hubert was obligated to grant David another extension or to await the Town’s decision on the Article before proceeding with the sewer work for the property.
The defendants have demonstrated that the plaintiff has no reasonable expectation of establishing her breach of contract claims and the plaintiff fails to present specific facts showing the existence of a genuine dispute. Accordingly, Brousseau and Hubert’s motion for summaiy judgment is allowed as to the plaintiffs breach of contract claims.
II. The Plaintiffs Breach of Fiduciary Duty Claim Against the Defendant Brousseau
The plaintiff claims that Brousseau owed her a fiduciary duty and breached that duty by paying the contractor from the escrow funds without her authorization.[7] The defendant alleges that his duties to David are limited to those duties owed as an escrow agent and, thus, he cannot be held liable for a breach of fiduciary duty.
The holder of funds in escrow owes a fiduciary duty to both parties of an escrow agreement. Kaarela, 33 Mass.App.Ct. at 412-13. The holder further owes a fiduciary duty to fulfill the terms of the escrow agreement. See Discipline of Two Attorneys, 421 Mass. 619, 626 (1996). “The facts of a particular situation will be important in deciding the nature of an escrow holder’s duties to the parties to the escrow.” Id. at 627.
As the holder of funds deposited in escrow, Brousseau owed a fiduciary duty to both Hubert and David to carry out the Escrow Agreement’s terms. As discussed above, Brousseau fulfilled the terms of the agreement by paying the contractor to begin the sewer work and thereby satisfied his fiduciary obligation to both Hubert and David. The defendant Brousseau, therefore, is entitled to summary judgment on the plaintiffs breach of fiduciary duty claim.
III. The Plaintiffs Quantum Meruit and Unjust Enrichment Claims against the Defendants Hubert and Town A. Quantum Meruit
Quantum meruit is “a theory of recovery, not a cause of action. It is a claim independent of an assertion for damages under the contract, although both claims have as a common basis the contract itself.” J.A. Sullivan Corp., 397 Mass. at 793 (emphasis in original). Under this theory, the underlying basis for recovery is premised on principles of equity and fairness to remedy the unjust enrichment of one party at the expense of another. Id.; Liss v. Studeny, 450 Mass. 473, 479 (2008) (citation omitted). “The injustice of the enrichment or detriment equates with the defeat of a person’s reasonable expectations.” Liss, 450 Mass. at *265 480 (citation omitted). The mere fact that a person has benefited from another, therefore, is insufficient for imposing restitution. Id. at 479 (citations omitted).
1. Regarding Hubert
The plaintiff claims that she should have been saved the cost of the sewer work had Hubert awaited the resolution of the Town Article to install the sewer line which would have benefited Hubert and other residents. Hubert claims that because David had accepted financial responsibility for the sewer work and the release of escrow funds did not damage David, she was not unjustly enriched at David’s expense.
Hubert benefited from the installation of the sewer connection. David, however, had agreed to confer this benefit in connection with the sale of her property and pursuant to the Escrow Agreement. As discussed above, the agreement was not contingent, nor ever made contingent, upon the Town’s decision to install the sewer connection. Indeed, the agreement was entered into even before the plaintiff became aware that municipal handling of the matter was a possibility. Under the circumstances, equity and fairness do not warrant David’s recovery of the cost of the sewer work.
2. Regarding the Town
It is undisputed that the Town was not a party to the Escrow Agreement. It is further undisputed that no express contract existed between David and the Town regarding reimbursing David for the cost of the sewer connection. David claims that the Town was unjustly enriched from her installation of the sewer line because the Town will be able to collect fees and betterments from the residents on Juniper Lane.
To recover in quantum meruit, aplaintiff must have expected that the defendant would pay for the work, that the defendant acted with that expectation, and that the defendant, without objection, allowed the plaintiff to do the work. Home Carpet Cleaning Co., Inc. v. Baker, 1 Mass.App.Ct. 879, 880 (1974) (citation omitted). Recovery based upon quantum meruit, however, is not allowed where the alleged contractual, or implied contractual, obligation on the part of a Town is in contravention of statutory requisites. See Massachusetts Gen. Hosp. v. Revere, 385 Mass. 772, 774-76 (1982), overruled on other grounds by City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239 (1983); Adalian Bros., Inc. v. Boston, 323 Mass. 629, 632 (1949).
Clearly, the timing of the Town’s ultimate decision and work on the sewer connections for Juniper Lane was unfortunate for the plaintiff. Under the circumstances, however, the plaintiff could not reasonably have expected the Town to reimburse her for the sewer work. At the time of the plaintiffs meeting with Leal and Robert, she had already incurred the obligation to install the sewer connection. The record shows that the two Town officials informed David that a Town warrant article had to be approved before the Town could take on the sewer project. David sought to delay the sewer installation by requesting that the Town withhold any sewer permits for the property, but was informed that the Town had no grounds to do so. By the time the Town approved the Article, which contained no provision for reimbursing David, M&M had already installed the sewer main. The record shows that the Town pursued the proper municipal course of action and that it did not take advantage of David’s situation to its own benefit.
Accepting that Keenan had told David sometime after the sewer connection was completed that it would be fair for her to be reimbursed, as the plaintiff states in her affidavit, Keenan’s representation did not bind the Town where the authority to enter into a contract relating to the sewer project resided in the Board of Selectmen. G.L.c. 40, §4: Article 9; Town of Webster Charter. No recovery in quantum meruit against the Town is warranted.
B. Unjust Enrichment
Unjust enrichment is the “retention of a benefit conferred by another, without offering compensation, in circumstances where compensation is reasonably expected.” Black’s Law Dictionary, 1536 (7th ed. 1999). Unjust enrichment is a claim in equity. Santagate v. Tower, 64 Mass.App.Ct. 324, 329 (2005). Similar to the theory of quantum meruit, unjust enrichment requires more than just a benefit as a basis for restitution. Comm. Bldrs. v. Indian Motorcycle Assoc., 44 Mass.App.Ct. 537, 560 (1998). Rather, the benefit “must be unjust, a quality that turns on the reasonable expectations of the parties.” Id.
1. Against Hubert
The Escrow Agreement expressly outlines David’s responsibility for connecting the property to the Town sewer lines at her own expense. That David fulfilled an obligation under the agreement to pay for pumping the septic tank does not absolve her of her other obligations under the agreement. As discussed previously, the escrow funds were reserved for the sewer connection and Hubert instructed Brousseau to pay the contractor for the work after David had failed to adhere to the amended deadline. It would be unreasonable for David to expect to recover the costs of the sewer connection from Hubert and would be unjust to require that Hubert reimburse David.
2. Against the Town
The sewer line was installed pursuant to David’s prior obligation under the Escrow Agreement in connection with the consummation of the sale of her property. As discussed above, David could not reasonably have expected that the Town would reimburse her for the sewer work. That the Town now would enjoy benefits incidental to the installation does not make the situation here unjust.
*266 ORDER
For the foregoing reasons, it is ORDERED that:
1. The defendant, Town of Webster’s Motion for Summary Judgment is ALLOWED;
2. The defendant, Thomas W. Brousseau’s Motion for Summary Judgment is ALLOWED,
3. The defendant, Melissa Hubert’s Motion for Summary Judgment is ALLOWED.

 The plaintiff fails to dispute the facts set forth by each defendant’s statement of undisputed material facts in accordance with Rule 9A(b)(5). Those facts, therefore, are deemed admitted. Sullivan v. Liberty Mut. Ins. Co., 444 Mass. 34, 46 n.18 (2005). However, where the plaintiffs proffered facts dispute those presented by the defendants, the court considers them to the extent that they are material. See Dziamba v. Warner & Stackpole, LLP, 56 Mass.App.Ct. 397, 399-401 (2002).

 310 Code Mass. Regs. §15.301 (2006).

 Hubert expressly stated that “(t]his matter will be discussed and deceided [sic] upon at this meeting only with no continuations or extensions.” Hubert’s undated signed memorandum granting the extension was copied to Brousseau and Thomas W. Gorski, David’s attorney at the time.

 At the May 10, 2004 Town meeting, Article 24 stated ‘To see if the Town will vote to raise and appropriate, transfer or borrow the amount of $40,000 for the purpose of completing all tasks associated with the extension of sewer to the residents of Juniper Lane and Cranberry Road. All labor to be supplied by the Town and expenses to be recovered by betterments according to Town Policy: or take any action thereon."

 At this meeting, the Article concerning the sewer project was amended to read “that the Town vote to borrow the amount of $40,000 for the purpose of completing all tasks associated with the extension of sewer to the residents of Juniper Lane and Cranberry Road, that 100% of the project costs be assessed by betterments to those who will benefit from the project using uniform unit method, and that the Board of Selectmen be authorized to enter into any and all contracts necessary to accomplish the purposes of this article.” Instead of hiring a private contractor, however, the Town chose to use its own resources to perform the work.

 The plaintiff also alleges in her complaint that Brousseau had a conflict of interest, but concedes in her opposition motion that no attorney-client relationship existed between them. In the absence of such a relationship, and thus an absence of duty to the plaintiff, this court need not address this issue further. See Miller v. Mooney, 431 Mass. 57, 61 (2000); Dolan v. Hickey, 385 Mass. 234, 236 (1982).