Finard & Company, LLC, & another[1] vs. Sitt Asset
Management & another.[2]

No. 10-P-31.

Suffolk. October 13, 2010. - April 7, 2011.

Present: McHugh, Rubin, & Hanlon, JJ.

*Damages,* Quantum meruit. *Practice, Civil,* Judgment notwithstanding verdict,
Damages, Instructions to jury.

A Superior Court judge properly denied a motion of the defendants, the own-
ers and managers of a shopping mall, for judgment notwithstanding the
verdict awarding damages in favor of the plaintiffs, two commercial real
estate brokerage firms, on a quantum meruit theory, where the communica-
tions between one of the plaintiff firms and its agents and the defendants
and their agents were such that the jury could have found that the plaintiff
firm had a reasonable expectation it would be paid a brokerage commis-
sion for its work on a lease agreement [229-230]; and where the evidence
was sufficient for the jury to conclude that the written contract between the
other plaintiff firm and the defendants had been terminated, and there was
no oral contract between them, and therefore, recovery under a theory of
quantum meruit, on these facts, was permissible [230-231].

In a civil action brought by two plaintiff commercial real estate brokerage
firms, alleging, inter alia, breach of contract and seeking quantum meruit
damages, the judge properly declined to dismiss one of the defendant own-
ers and managers of a shopping mall after the jury found in that defend-
ant's favor on all of the contract issues, where, although the defendant was
not listed as a party to the final lease agreement, it was reasonable for the
plaintiffs to seek payment from both defendants given that the majority of
the dealings were conducted with an individual who was an owner and
manager of both defendant companies. [231-232]

At the trial of a civil action, there was no error in the judge's instructions to
the jury. [232]

CIVIL ACTION commenced in the Superior Court Department on
April 12, 2006.

The case was tried before *Carol S. Ball,* J., and motions for a

---

[1]The Dartmouth Company, Inc.
[2]Aroostook Centre, LLC.

new trial and for judgment notwithstanding the verdict were considered by her.

*Barry A. Bachrach* for the defendants.

*Richard B. Michaud* (*John B. Harkavy* with him) for the plaintiffs.

HANLON, J. The defendants, owners and managers of a mall in Maine, appeal from the denial of their motion for judgment notwithstanding the jury verdict in favor of the plaintiffs-brokers. The defendants argue that the plaintiffs-brokers did not establish, as matter of law, that they were entitled to quantum meruit relief; that a new trial is required due to incorrect jury instructions on the quantum meruit theory; and that the case against Sitt Asset Management (Sitt Asset) should have been dismissed. For the reasons laid out below, we affirm.[3]

*Background.* The plaintiffs, Finard & Company, LLC (Finard), and The Dartmouth Company, Inc. (Dartmouth), are both Massachusetts commercial real estate brokerage firms. The defendant, Sitt Asset, is a New York real estate investment and management company that manages numerous properties, including the Aroostook Centre Mall (mall) in Presque Isle, Maine; Sitt Asset is owned by the Sitt family. The other defendant, Aroostook Centre, LLC (Aroostook), owns the mall; Aroostook is also owned by the Sitt family.

In November, 2001, Finard entered into an exclusive agreement to lease (agreement), in which the "Owner" of the mall agreed to pay Finard a leasing commission in exchange for Finard's "best efforts" in procuring tenants for the mall.[4] The owner, who is not identified in the agreement, reserved the right to cancel the agreement as long as Finard was given thirty days' notice.[5]

---

[3]As we affirm the judgment in favor of the plaintiffs, we do not address the plaintiffs' cross-appeal, which they agreed to waive.

[4]The agreement stipulated that "[i]n the event a tenant is . . . represented by an authorized broker," Finard would be paid 150 percent of the amount otherwise payable. Finard was also entitled to a commission if, within sixty days after the agreement expired or was terminated, the mall was leased to a tenant with whom Finard had negotiated or to whom Finard had "submitted" the mall before the expiration or termination of the agreement.

[5]In March, 2003, Sitt Asset sent a letter terminating the agreement with Finard. It then rehired Finard in May, 2003, with the identical agreement, at least as to the terms described *supra*.

In May, 2003, Daniel Connelly, Finard's sales associate, met with a representative of Lowe's Home Centers, Inc. (Lowe's), about leasing space at the mall. In the fall of 2003, Robert Grady, a broker with Dartmouth, acting on behalf of Lowe's, began discussion with Connelly and Sitt Asset about placing a Lowe's store at the mall. During the discussions, Finard was acknowledged to be the exclusive broker for the mall. Lowe's submitted a written lease proposal to Sitt Asset on January 23, 2004. On February 19, 2004, Sitt Asset exercised its option to terminate the agreement with Finard, which Finard acknowledged[6]; Finard notified Sitt Asset it would continue working with six prospective tenants, including Lowe's.

In April, 2004, during negotiations between Sitt Asset and Lowe's, Sitt Asset sent Dartmouth a counterproposal for a lease. As to the brokerage commission, Sitt Asset's proposal stated: "The parties recognize [Dartmouth and Finard] as the only real estate brokers. Brokerage fees are to be paid by [Aroostook] and shared between [Dartmouth and Finard] in accordance with a separate agreement between [Aroostook] and Brokers." In October, 2005, Aroostook and Lowe's entered into a lease agreement, which restated that Dartmouth and Finard were the only brokers involved. Finard sent Aroostook an invoice in November, 2005, for the brokerage commission due to it and Dartmouth, which the defendants refused to pay.

Claiming entitlement to a brokerage commission for securing the lease between Lowe's and Aroostook, the plaintiffs filed a complaint alleging breach of contract, quantum meruit, unjust enrichment, and breach of the covenant of good faith and fair dealing. The parties' cross motions for summary judgment were denied. During the jury trial, the defendants moved unsuccessfully for a directed verdict at the close of the plaintiffs' evidence and at the close of all evidence.

In response to special verdict questions, the jury found: (1) Sitt Asset "and/or" Aroostook did not terminate the "exclusive written contract" with Finard in "bad faith in an attempt to deprive [Finard] of a brokerage commission"; (2) Sitt Asset "and/or" Aroostook did not "breach an oral contract to pay [Finard] and/or

---

[6]In the termination letter to Finard, Sitt Asset stated, "We would be glad to work with you otherwise on a non-exclusive basis."

[Dartmouth] a commission"; and (3) Finard "and/or" Dartmouth were entitled to recover the fair value of their services, $475,000, under a quantum meruit theory. The defendants' motions for judgment notwithstanding the verdict and new trial were denied without a hearing.

*Discussion.* a. *Standard of review.* "Because the jury are a pillar of our justice system, nullifying a jury verdict is a matter for the utmost judicial circumspection." *Cahaly* v. *Benistar Property Exchange Trust Co.*, 451 Mass. 343, 350 (2008). On review of a judgment notwithstanding the verdict, construing the evidence in the light most favorable to the plaintiffs, we "consider whether 'anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn' in favor of the nonmoving party." *Phelan* v. *May Dept. Stores Co.*, 443 Mass. 52, 55 (2004), quoting from *Poirier* v. *Plymouth*, 374 Mass. 206, 212 (1978).

b. *Quantum meruit.* "Quantum meruit is a claim independent of an assertion for damages under the contract, although both claims have as a common basis the contract itself. It is an obligation that arises under quasi contract theory in which an obligation is created by law for reasons of justice . . . . The underlying basis for awarding quantum meruit damages in a quasi-contract case is unjust enrichment of one party and unjust detriment to the other party. The injustice of the enrichment or detriment equates with the defeat of a person's reasonable expectations. While a party does not recover on the contract itself under quantum meruit, a court may look to the terms of the underlying contract to help determine appropriate recovery under quantum meruit." *Liss* v. *Studeny*, 450 Mass. 473, 479-480 (2008) (quotations and citations omitted).

To achieve recovery upon the theory of quantum meruit, the claimant must prove (1) that it conferred a measurable benefit upon the defendants; (2) that the claimant reasonably expected compensation from the defendants; and (3) that the defendants accepted the benefit with the knowledge, actual or chargeable, of the claimant's reasonable expectation. See *Albert* v. *Boston Mortgage Bond Co.*, 237 Mass. 118, 121 (1921); *Therrien* v. *Leblanc*, 282 Mass. 328, 330-331 (1933); *General Dynamics*

*Corp.* v. *Federal Pac. Elec. Co.*, 20 Mass. App. Ct. 677, 683 (1985).

Contrary to the defendants' argument, viewing the evidence in the light most favorable to the plaintiffs, there were sufficient facts here to justify the verdict against them on the theory of quantum meruit. As to Dartmouth, the defendants contend that it was not entitled to quantum meruit relief as neither defendant engaged Dartmouth to find a lessee for the mall. *Tristram's Landing, Inc.* v. *Wait*, 367 Mass. 622, 629 (1975).[7] We disagree; the communications between Dartmouth and its agents and the defendants and their agents, written, oral, and electronic, were such that the jury could find Dartmouth had a reasonable expectation it would be paid a brokerage commission for its work on the Lowe's lease agreement.

The defendants argue that Finard was not entitled to recover under a theory of quantum meruit because there had been a written contract between the parties, the agreement. They are correct that "[r]ecovery in quantum meruit presupposes that no valid contract covers the subject matter of a dispute. Where such a contract exists, the law need not create a quantum meruit right to receive compensation for services rendered." *Boswell* v. *Zephyr Lines, Inc.*, 414 Mass. 241, 250 (1993). However, in this case, the jury concluded, based on sufficient evidence, that the written contract between Finard and the defendants had been terminated, and there was no oral contract between them; therefore, recovery under a theory of quantum meruit, on these facts, was permissible. We need not reach the issue whether Finard performed all of its work before the agreement was properly terminated or whether some of its work was performed before

---

[7]"When a broker is engaged by an owner of property to find a purchaser for it, the broker earns his commission when (a) he produces a purchaser ready, willing and able to buy on the terms fixed by the owner, (b) the purchaser enters into a binding contract with the owner to do so, and (c) the purchaser completes the transaction by closing the title in accordance with the provisions of the contract. If the contract is not consummated because of lack of financial ability of the buyer to perform or because of any other default of his . . . there is no right to commission against the seller. On the other hand, if the failure of completion of the contract results from the wrongful act or interference of the seller, the broker's claim is valid and must be paid." *Tristram's Landing, Inc.* v. *Wait*, 367 Mass. at 629, quoting from *Ellsworth Dobbs, Inc.* v. *Johnson*, 50 N.J. 528, 551 (1967).

and some after the termination. Either way, Finard would be entitled to recover here under a theory of quantum meruit. See *Zabin* v. *Picciotto*, 73 Mass. App. Ct. 141, 151 (2008) ("Strictly speaking, the termination of the attorney's engagement ends the attorney's right to recover on the contingent fee agreement itself," but "[t]he ability of an attorney to recover fees under a theory of quantum meruit arising out of a contingent fee agreement is settled"). See also *Liss* v. *Studeny*, 450 Mass. at 480 ("a construction contract may require one hundred units to be built to reach the contract's desired goal. If the client fires the builder after the builder had made ninety units, a fact finder will have a practicable method to determine the builder's recovery under quantum meruit because the judge can determine how close to the desired result the builder brought the matter").

The defendants also argue that *Hillis* v. *Lake*, 421 Mass. 537 (1995), is "virtually on all fours with the instant case." We disagree. The original agreement of the parties in *Hillis* fell through. "The . . . requirement [that 'the purchaser completes the transaction by closing the title in accordance with the provisions of the contract'] was not met [in *Hillis*] because no closing occurred under the first agreement." *Id.* at 542, quoting from *Tristram's Landing, Inc.* v. *Wait*, 367 Mass. at 629. In addition, "the second agreement differed substantially from the first agreement, and the difference rendered the second agreement substantially less favorable to the defendants than the first agreement had been." *Id.* at 543. No such major difference can be found here, where Lowe's ultimately agreed to lease property in the mall as originally envisioned. Finally, even the second agreement in *Hillis* eventually fell through. *Id.* at 541.

c. *Dismissal of Sitt Asset.* The defendants' additional arguments are not persuasive. They argue that, because the jury found in their favor on all of the contract issues, Sitt Asset should have been dismissed, leaving only Aroostook liable to the plaintiffs for the commission. Although the final lease agreement listed only Aroostook and Lowe's as its parties, it was reasonable for the plaintiffs to seek payment from both defendants where the majority of the dealings were conducted with Jack Sitt, an owner and manager of both defendant companies. See *LaChance* v. *Rigoli*, 325 Mass. 425, 427 (1950) ("contract-

ing party must look for payment to the one to whom credit was extended when the work was done, that is, the one who was expected to pay and who in fact expected to pay or as a reasonable man should have expected to pay").

d. *Jury charge.* Finally, there was no error in the charge where "as a whole . . . [it] provided the jury with clear, adequate, and complete instructions on the issues presented by the evidence." *Leech* v. *Ebers*, 12 Mass. App. Ct. 1004, 1005 (1981). See *Bernier* v. *Boston Edison Co.*, 380 Mass. 372, 387 (1980). In addition, the two instructions challenged by the defendants were given in the context of the judge's discussion of contract theory, which the jury resolved in the defendants' favor.

We affirm the jury verdict and the judge's denial of the defendants' motions for judgment notwithstanding the verdict and new trial.

*So ordered.*