Greco, PJ.
Riverside Glass Company, Inc. (“Riverside”) brought this action against Pailin Market, Inc., doing business as Pailin Supermarket (“Pailin”), to recover damages in quantum meruit. Pailin has appealed the allowance of summary judgment in favor of Riverside.
Pailin argues that there were factual issues as to whether it was the proper party to be sued and whether there was a contract between these parties. The record before us does not contain a copy of Riverside’s complaint. We gather from the materials we do have, however, that Pailin is a supermarket located on Branch Street in Lowell, Massachusetts. It is a tenant in that building along with another tenant, which operates a restaurant and banquet facility under the name of the “Pailin Restaurant.” The building underwent renovations in 2005. As part of those renova *56 tions, Riverside installed a window and two entry doors to that part of the building housing the supermarket. In this lawsuit, Riverside alleged that it had oral contracts with Pailin to do that work, that Pailin agreed to pay for the materials and labor, that the work was completed, that Pailin did not make the payments due, and that Pailin did not make any complaints about the work until three years after it had been completed. Riverside sued the corporate entity, Pailin Market, Inc. On March 30,2009, a default judgment was entered against Pailin. That judgment was vacated on November 6, 2009. The docket indicates that Pailin filed an answer on December 9, 2009, but any such answer is not in the record before us.
An action in quantum meruit has been described as follows: “One who has rendered valuable services pursuant to an oral agreement, which cannot be enforced on account of the statute of frauds, may recover the fair value of the services. This remedy is allowed, not as a means of indirectly avoiding the statute, but to prevent the statute from being employed as an instrument of fraud. The remedy compels the defendant to pay for what he has received by virtue of the express contract.” Heil v. McCann, 360 Mass. 507, 511 (1971). See also Slawsby v. Slawsby, 33 Mass. App. Ct. 465, 466 (1992). ‘To achieve recovery upon the theory of quantum meruit, the claimant must prove (1) that it conferred a measurable benefit upon the defendant[]; (2) that the claimant reasonably expected compensation from the defendant!]; and (3) that the defendant]] accepted the benefit with the knowledge, actual or chargeable, of the claimant’s reasonable expectation.” Finard & Co. v. Sitt Asset Mgt., 79 Mass. App. Ct. 226, 229 (2011).
The materials filed by the parties in support of, or in opposition to, summary judgment have deficiencies. The sole submission by Riverside was the affidavit of John Finegan (“Finegan”), who identified himself as Riverside’s treasurer and director. Finegan averred that the work that is the subject of this lawsuit was performed for Pailin Market, Inc. on September 9,2005 and November 4,2005 as evidenced by two invoices attached to Riverside’s complaint.[2] Those invoices are on Riverside’s letterhead, indicate Pailin is the customer, are addressed to Pailin Supermarket, and contain a fax number of 603.860.8701. Finegan further stated that he had worked with Pailin on a project eighteen months earlier. However, that work “was already approved by all the parties with all bills for labor and services having already been paid.” Finegan maintained that the work Pailin is complaining was defective in this case was actually related to that earlier job. Finally, Finegan seemed to acknowledge that Pailin’s complaint about “panic devices” does relate to the more recent work, but states, without admitting that the work was defective, that the devices comprised only $760.00 of the $6,773.98 sought in this lawsuit. Nothing in the invoice or in Finegan’s affidavit, however, named the individuals who entered into this oral agreement for these services, or indicated its terms.
As to Pailin’s opposition to summary judgment, the record contains three items, to wit, an undated affidavit of Bunrith Lach (“Lach”), a letter Lach wrote to Riverside’s attorney, and Lach’s answers on behalf of Pailin to Riverside’s interroga- *57 tones. In these items, Lach describes himself at one point as director and treasurer of Pailin Market, Inc., while at another point as “Owner of Pailin Market.” In an apparent effort to show that Riverside’s services were performed on behalf of the owners of the building and not on behalf of Pailin, Lach stated that Pailin does not own the building in which the market does business. Rather, he, Lach owns the whole building “as a private individual with [his] son Rasy Ann.” Lach stated that in 2005, he “did not, as agent for the corporation,[3] ... enter into a contract with the Plaintiff, Riverside Glass,” but that “the General Contractor handles these matters.” He further stated that Steve Fitzgibbon (“Fitzgibbon”) “acted as general contractor in the renovation of the building that houses Pailin Market and Pailin Restaurant.” In that regard, Lach noted that the invoices referred to above contained Fitzgibbon’s telephone number (although it actually appears to be a fax number). In the letter dated January 26,2009 to Riverside’s attorney, which was signed by Lach as “Owner of Pailin Market,” Lach wrote that Riverside “ha[d] been doing... business with my building since June 2005.” Lach complained in the letter that he had to get a quote “to either fix or replace the door” Riverside had installed, but also stated, “I understand that I am liable for the charges on the bill, but due to the negligence of Riverside... to properly install the door or failure to replace it, I refused to make payments for a door that was not properly fixed.”[4]
On June 14,2010, almost eighteen months after his letter to Riverside’s attorney, Lach answered interrogatories propounded by Riverside. He clearly indicated, however, that he did so in his capacity as treasurer of Pailin Market, Inc. In those answers, he stated that the “General Contractor was the person [who] entered into the agreements, I was not involved in the agreements.” This theme was repeated throughout the answers with such statements as “Defendant or Building Owner will have to procure replacement products for the 3 faulty products” and “Defendant Corporation or Building Owner have paid the Plaintiff in excess of $15,000.”
Riverside’s summary judgment motion was allowed on September 8, 2010. Because the trial judge thereafter was on an extended medical leave, the parties agreed to have damages assessed by a different judge “based solely on the written record.” That judge, on May 23,2011, assessed damages in the amount of $6,773.98, plus interest of $4,469.71 and costs of $238.82 for a total of $11,482.51.
Pursuant to Mass. R. Civ. R, Rule 56(c), summary judgment “shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and responses to requests for admissions ..., together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” If such a showing is made, “an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if *58 appropriate, shall be rendered against him.” Rule 56(e).
On one hand, Riverside’s position is somewhat straightforward. The statement in Finegan’s affidavit clearly indicates that Riverside had performed the services for Pailin. However, the documentary support for that statement were the invoices faxed to Fitzgibbon whom, as discussed below, Lach is saying worked for the owner of the building and not for Pailin. Finegan does seem to indicate that Pailin’s complaint about the “panic devices” may have merit. As treasurer of Riverside, Finegan was in a position to know whether Pailin paid for the services. However, whether Finegan was actually in a position to know such facts, neither he nor any other person has identified on Riverside’s behalf who specifically entered into the oral agreement to perform these services, be it Pailin, Lach, or someone else.
On the other hand, Pailin’s position is far from straightforward as evidenced by its Rule 56 materials, all of which are based on Lach’s representations. Lach, however, is wearing several hats in this contest: director of Pailin Market, Inc., treasurer of Pailin Market, and joint owner with his son of the building in which Pailin Market is a tenant. And he is doing so in a case in which Pailin is alleging error on the grounds that it is “merely a tenant in the building of another,” and that “Rasy Ann, the property owner, is the proper defendant in the suit and... an indispensable party.” It cannot be said as a matter of law that a landlord at its own expense may not choose to make renovations to its property that benefit a tenant. Lach further states that he was “not involved in the agreements,” and that the general contractor entered into them. While it could be inferred that Fitzgibbon was that contractor, Lach does not indicate whether Fitzgibbon was working for Lach or his son, as owners of the building, or Pailin; when any agreement was made; or to what the parties agreed. An inference could be drawn that the services at issue here were done for Lach, as owner, from the fact that Fitzgibbon had done prior work on the building for Lach, although such prior work would obviously not have precluded Fitzgibbon from subsequently making renovations in the supermarket on behalf of Pailin. While Lach admitted that he is “liable for the charges on the bill” and complained about Riverside’s workmanship, there is no indication in which capacity he did so.
In these circumstances, it cannot be said that either party provided “concrete evidence,” Ng Bros. Constr., Inc. v. Cranney, 436 Mass. 638, 648 (2002), to support their positions on summary judgment. The motion judge was presented with ambiguous and somewhat inconsistent representations by both parties concerning very basic facts surrounding a not particularly complicated transaction, all in a context where one of the major participants, Lach, played various and conflicting roles. Riverside’s motion for summary judgment should have been denied.
Accordingly, summary judgment in favor of Riverside Glass Company, Inc. is vacated. The case is returned to the Lowell Division of the District Court Department for trial.
So ordered.

 As noted above, we do not have the complaint. However, the record appendix does appear to contain these invoices. The invoices were for $152.00 and $6,621.98, respectively.

 Since he had just referred to Pailin Market, Inc., we take this to mean that he, personally, did not contract with Riverside.

 Lach also noted in this letter that he was “close to filing for bankruptcy,” was “behind for mortgage payments for many months,” and owed “the city property tax up to $50,000.00.”