METHODIST EPISCOPAL SOCIETY IN CHARLTON CITY *vs.* EDWARD AKERS & another.

Worcester.    October 1, 1896. — February 25, 1897.

Present: FIELD, C. J., HOLMES, KNOWLTON, LATHROP, & BARKER, JJ.

*Equity Practice — Findings of Master — Boundary — Decree for Removal of Building — Damages.*

If the rulings of a master upon the admission or exclusion of evidence, even if wrong, did not materially affect his findings, exceptions to such rulings become immaterial.

In a suit growing out of a disputed boundary, if the documentary and oral evidence fails to show where the boundary line was, the master may rely upon

the occupation of the land as evidence of the practical construction put by the parties upon their respective deeds, or of prescriptive right.

Where buildings are found to have been so placed by the defendant in a suit in equity for their removal as to occupy a small portion of the plaintiff's land, if they in no way interfere with the use, enjoyment, or value of the plaintiff's remaining land, although one of them was erected after the suit was begun, the plaintiff is not entitled as of right to a decree for their removal if he can be fully compensated in damages.

BILL IN EQUITY, filed in the Superior Court, to compel the removal of certain buildings alleged to have been erected by the defendants upon the plaintiff's land in Charlton, and for damages. Hearing before *Gaskill*, J., who, at the request of the parties, reported the case for the determination of this court. The facts appear in the opinion.

*W. S. B. Hopkins & A. J. Bartholomew*, for the defendants.

*C. A. Merrill*, for the plaintiff.

BARKER, J. The case comes here upon a report from the Superior Court. It was heard in that court by a master, who annexed to his report a statement of all the evidence. Both parties had exceptions to the master's report, and the plaintiff's exception, which was only to the exclusion of a document, a copy of which is set out in the statement of the evidence, was sustained, and the defendants' exceptions were overruled; and upon the request of both parties the case was reported for our determination.

We construe the report of the Superior Court to be in effect a decision confirming the master's report, and reserving the question whether that decision is correct, and also the further question what decree shall be entered. The master's report will stand, unless it clearly appears that its conclusions are wrong.

It is unnecessary to consider at length the exceptions to the admission or exclusion of evidence by the master. An examination of the record shows that if the rulings of the master, under which, as the defendants contend, evidence was improperly admitted or rejected, were all wrong, the errors did not materially affect the findings.

The case grows out of a disputed boundary between a mill property on Cady Brook, in Charlton, and an adjoining messuage, and the plaintiff's contention is that the defendants have

placed and maintained two buildings upon a small portion of the plaintiff's land next to the defendants' land. The master finds that, when the first of the two buildings was so placed, in the year 1893, the land under it, as well as that on which the other building was subsequently put, was owned by the plaintiff. The correctness of this finding is the principal question in the case. The defendants' mill plant is on the southerly side of Cady Brook, and the messuage is on its northerly side. The brook runs from the roll-way of the defendants' milldam, in close proximity to their mills; and the buildings which the plaintiff contends have been put upon its land connect with the mills, but are in part or wholly upon the northerly side of the brook. The finding is, in substance, that while the original boundary line cannot be fixed with certainty, the plaintiff has title to that part of the premises in dispute which lies west of the milldam and north of the stream. Notwithstanding the minute and careful argument presented by the defendants upon the oral and documentary evidence contained in the record, we cannot see that the master was wrong in this finding, and it must stand.

The land in dispute, up to the year 1787, was owned by Samuel Danforth, who, on November 3, 1787, conveyed it in a tract of thirty-eight acres to Reuben Pratt. On May 10, 1791, Reuben Pratt conveyed a part of this land to Nathaniel Goodell, and under him the defendants claim. Before August 3, 1804, by a deed now lost, Pratt conveyed land to Ebenezer Phillips, who, on August 3, 1804, conveyed to Esquire Weld, under whom the plaintiff claims. Goodell had a milldam, and the description in the deed of 1804 to Weld is of about three acres of land, with a dwelling-house and barn, beginning at a stake and stones on the north side of a town road about one rod from Goodell's dam, and running thence northerly by Goodell's land about eight rods to a stake and stones, and thence still northerly to Richardson's land, thence westerly by Richardson's land about eighteen rods to Bates's land, thence southerly by Bates's land to the same road, and thence easterly by the road to the place of beginning. The next deed in this chain of title was made by Weld to one Towne, on December 19, 1804, with the same description, and the next, by Towne to Jabez Willis, on May 13, 1814,

has the same designation of the starting point, at a stake and stones at the southeast corner about one rod from the milldam, and the same bounds, save that the adjoining owners are different.

Before May 13, 1814, there were several conveyances of the adjoining lands now belonging to the defendants. Nathaniel Goodell conveyed, on March 21, 1806, to his son, Nathaniel Goodell, Jr., who conveyed on the next day to John Rider, who conveyed on March 4, 1811, to Holbrook. The deed of Goodell to his son, March 21, 1806, describes this parcel by beginning at the southwest corner at a stake and stones, then north by land of Towne to a stake and stones, and then easterly, and then by various bounds to the road, and by the road to the place of beginning. The deeds of Goodell, Jr. and of Rider give more particular descriptions, by courses and distances, and also by naming lands of adjoining owners, and other monuments. From an examination of the deeds we consider it now impossible to ascertain from them the true boundary between the two properties. Evidence such as is usually introduced in cases of disputed boundaries was introduced before the master, and does not enable us to solve the question where the original boundary line was. In the lapse of time roads have been changed, buildings burned, rebuilt, and moved, walls and bridges have been moved, and trees have disappeared. The mass of oral testimony and of documentary evidence shows that the only practicable way to ascertain the boundary line is to rely upon the occupation of the land, as evidence of the practical construction put by the parties upon their respective deeds, or of prescriptive right. The disputed tract had been always open and unenclosed, and the northerly bank of the stream is rocky and rough, and bore only brambles and bushes. The plaintiff's predecessors in title had cut grass up to the bank. From the whole evidence we cannot say that the finding that the plaintiff and its predecessors in title from 1814 to 1893 had been in possession of and exercised acts of ownership over the land north of the brook, and that during that time the defendants and their predecessors had not done so, was wrong. The finding supports the conclusion that the plaintiff owned the land north of the brook.

There is no dispute that in the year 1893 the defendants placed upon the land north of the stream a storehouse which they have since continued to use in connection with their mill. The suit was begun on February 24, 1894, and after that day, and while the suit has been pending, they have erected over the stream and in part upon land on its northern bank an addition to a new building on the south side of the stream, forming part of their manufacturing plant.

The defendants contend that the findings relating to damages should be revised, but upon an examination of the evidence we cannot say that they are clearly wrong, and they must stand.

The master also finds that the defendants own vacant land near by, large enough to receive the buildings, and that the cost of moving them would be more than the value of the land in dispute, but not more than the value of the buildings.

There is no finding that the occupation by the buildings of the land now covered by them does any damage to the plaintiff save the mere occupancy of a comparatively insignificant part of its messuage, or that the buildings are obnoxious by reason of their use, or that they interfere in any way with the value or use of the rest of the plaintiff's land.

The report to this court states, that if the plaintiff has title to the land on which the defendants have erected the buildings, and the defendants are not required to remove them, judgment is to be entered for the plaintiff in the sum of $225 and costs; but if the plaintiff is entitled to an order for the removal of the buildings the plaintiff is to have nominal damages, costs, and such an order; and that if the buildings are not on the plaintiff's land, the judgment is to be for the defendants with costs. The report is made at the request of counsel for both parties.

We are of opinion that the plaintiff cannot require a removal of the buildings by the defendants. The buildings in no way interfere with the use, enjoyment, or value of the plaintiff's remaining land. If the plaintiff desired to regain possession, or to compel the defendants to cease to occupy, it could have done so by actions at law. While the defendants in placing their second building after the bringing of this suit must have acted with knowledge that the suit might show their act to be without right, what they did was under a claim of right, which

upon all the evidence may have been an honest claim, and does not require an order for removal as a punishment. The plaintiff shows no reason why the payment of the $225 will not be a full and adequate compensation. Upon consideration of all the facts and circumstances it seems to us that justice will be done if the boundary line is declared as found by the master, and the defendants, in addition to the taxable costs, shall pay to the plaintiff the sum of $225 with interest.

No order of this court seems to be necessary with reference to the mortgagee of the defendants' property, who has insisted upon intervening in the suit, and upon vouching in a former grantor to defend under his covenants.

The cause will be disposed of in the Superior Court by proceedings in accordance with this decision.      *So ordered.*