THOMAS M. COLLINS & another *vs.* ISAAC LOCKE COMPANY.

Suffolk.    March 19, 1926. — May 29, 1926.

Present: CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Landlord and Tenant,* Construction of leases as between adjoining tenants. *Evidence,* Admission by conduct.

Upon findings by a master, to whom was referred a bill in equity by a lessee of space in Faneuil Hall Market in Boston to enjoin a lessee of adjoining space from using certain sidewalk and street space adjoining the leased premises, it was *held,* that the space in question never was assigned definitely to either party, but that the intention of the parties was

clearly shown by their acts and their practically undisputed occupancy during a long term of years under different leases, from which it appeared that the defendant constantly had used the space without opposition by the plaintiff until just before the suit was brought; and that a decree dismissing the bill was proper.

BILL IN EQUITY, filed in the Superior Court on December 6, 1923, to enjoin the defendant from using a certain portion of the sidewalk and street in Faneuil Hall Market in Boston, to the use of which the plaintiffs claimed a right.

The suit was referred to a master. Material facts found by the master are described in the opinion. Exceptions by the plaintiffs to the master's report were heard by *Keating*, J., by whose order there were entered an interlocutory decree overruling the exceptions and confirming the report and a final decree dismissing the bill. The plaintiffs appealed.

*M. H. Sullivan*, (*L. C. Guptill* with him,) for the plaintiffs.
*J. H. Devine*, (*F. A. Thayer* with him,) for the defendant.

CARROLL, J. The plaintiffs and defendant are tenants of adjoining stalls and cellars in that part of Faneuil Hall Market known as Quincy Market, under leases from the city of Boston for the term of ten years from October 1, 1919. The controversy relates to a strip of sidewalk on South Market Street, about seven feet wide. The stalls of the defendant are numbered 97, 99, 101 and its cellar is numbered 18. The plaintiffs' stalls are numbered 93 and 95 and their cellar is numbered 17. The sidewalk space occupied by the plaintiffs is commensurate with the width of their two stalls, and the space occupied by the defendant with the width of its three stalls. The sidewalk space, however, does not correspond to the cellar space of the parties respectively, and it is the contention of the plaintiffs that they are entitled to occupy sidewalk space proportionate in width to the width of their cellar space.

South Market Street was laid out as a public way in 1825, its northerly limit being the southerly side wall of Quincy Market. The land over which the sidewalk extends is owned by the city of Boston. By the Revised Ordinances of 1914 of the city of Boston, Faneuil Hall Market limits include the lower floor, porches and cellar of the buildings

called Faneuil Hall and Quincy Market, a portion of North Market Street, thence to a line "thirty-five feet distant northerly from the sidewalk on the southerly side of South Market Street extended . . . to Merchants row." Both parties contend that they have the right to use the sidewalk adjoining their premises on South Market Street. For the purposes of this decision, we assume, without deciding, that they are right in this contention, and are authorized to occupy the sidewalk for the sale of their products.

In neither the plaintiffs' nor the defendant's lease is any charge made for sidewalk space as such. The report of the master, however, shows that the rents paid by the parties respectively are "based on the stalls and cellars alone," although the parties did not pay "as a specific payment" any sums for the use of the sidewalk and street in front of their premises.

The master also found that there was no custom as to allotting sidewalk space; "that such use is one which has grown up through the years and is permissive"; that the defendant and its predecessors in title have occupied the same stalls, cellar, sidewalk and street space which the defendant now occupies, since April, 1882, and the plaintiffs and their predecessors in title have occupied the same stalls, cellar, sidewalk and street space during the same period; that in 1910 the plaintiffs' predecessors in title excavated a subcellar under the sidewalk space on South Market Street involved in this controversy, and placed a granolithic walk over the subcellar, but that this walk was constructed with the permission of the defendant.

The master further found as follows: the canopies over the sidewalk differ in construction. They were reconstructed in 1920, the plaintiffs' canopy extending to the easterly line of the sidewalk space now occupied by them; the defendant's canopy extending from that line to the defendant's easterly line. There was no evidence in the case "as to how or by whom this sidewalk and street space was assigned." It appeared that at some time prior to 1882 street space was allotted to stalls 97, 99, and 101, in proportion to the stall space, without regard to cellar space. There was in evi-

dence a plan prepared in 1919 by the city engineer's office, but neither the plaintiffs nor the defendant knew of this plan until 1923, when the plaintiffs' claim was first brought to the attention of the defendant. It also appeared that in 1887 a dispute arose between the agents of the defendant and plaintiffs' predecessors as to the dividing sidewalk line. At that time the superintendent of markets indicated the space which has since been occupied by the parties and their predecessors, and that this was the only definite assignment ever made by the superintendent of markets.

In conclusion, the master found as a fact that the superintendent of markets is the person designated by the Revised Ordinances of 1914 of the city of Boston to assign space in the Faneuil Hall Market limits, and that there has not been under the present lease any definite assignment by the superintendent of markets of street or sidewalk space to either of the parties to this action, but that each party has continued to occupy street and sidewalk space that had been occupied by them under the previous lease.

On these findings of the master, the dismissal of the bill in the Superior Court was right. The space was not definitely assigned, but the intention of the parties is clearly shown by their acts and their practically undisputed occupancy during a long term of years under different leases. No question was ever raised by the parties themselves until 1923 that the defendant was not rightfully in occupation of the sidewalk co-extensive in width with his stalls, and no one ever considered that the width of the cellar space determined the width of the sidewalk space belonging to each until that time. As between the plaintiffs and the defendant, their intention as shown by their acts must govern. *Methodist Episcopal Society in Charlton City* v. *Akers*, 167 Mass. 560, 565. *Blais* v. *Clare*, 207 Mass. 67, 70. "Where the terms of a written instrument are not clear and explicit, the interpretation which the parties have placed upon it is of great importance in determining its true meaning." *New York Central Railroad* v. *Stoneman*, 233 Mass. 258, 263.

Some of the plaintiffs' arguments, especially those based on the comparison of rentals of cellar space with sidewalk

space and street privileges, might be of force if the question of the space to be included in a new unexecuted lease were involved; but they cannot override the clearly expressed intention of the plaintiffs and defendant, as shown by their acts and conduct for many years.

*Decrees affirmed with costs.*