Leibensperger, Edward P., J.
This case involves the closing of St. Frances X. Cabrán church (the “church”) as an existing Roman Catholic parish. The decision to suppress,[2] i.e., close, the church was made by plaintiff, the Roman Catholic Archbishop of Boston, a Corporation Sole (“RCAB”), and was announced in May 2004, to become effective on October 29, 2004. A certain group of former parishioners of the church, named as defendants in this action, disagreed with the decision to close. They elected to protest the decision in at least three ways. First, they commenced a “vigil” within church property in October 2004. The vigil continues to this date and consists of having one or more of their number present within the church building at all times — twenty-four hours a day, every day of the year — despite requests from the owner of the property to vacate. Next, in November 2004, some of the former parishioners initiated an appeal of the Decree of Suppression within the canonical process of the Roman Catholic church. Finally, they commenced a lawsuit in 2005 against the RCAB asserting an equitable interest in the church property. That lawsuit was dismissed and the dismissal was upheld by the Appeals Court as it concluded that the former parishioners lacked the requisite legal standing to assert a claim that the RCAB holds the church property in trust for the benefit of parishioners. Now the RCAB seeks to end the protest vigil. It requests equitable relief in the form of a declaratory judgment that the former parishioners, defendants and those acting in concert with defendants, are unlawfully and intentionally trespassing upon RCAB properly in the conduct of their vigil. RCAB moved for a preliminary injunction immediately upon the filing of the complaint requesting the identical relief it seeks as an ultimate remedy, a permanent injunction to bar the continuing trespass. Pursuant to Mass.R.Civ.P. 65(b)(2), I ordered that the trial of the action on the merits be advanced and consolidated for hearing with the request for a preliminary injunction. See Order on Plaintiffs Motion for Preliminary Injunction (Paper No. 12). Following that Order, defendants answered the complaint and asserted a counterclaim. Defendants also moved to dismiss RCAB’s complaint arguing that this court lacks jurisdiction to adjudicate the dispute over the alleged trespass. RCAB moved to dismiss defendants’ counterclaim.
A hearing on the motions to dismiss and a trial of this action took place on May 5, 2015. For the reasons stated below, I deny defendants’ motion to dismiss and allow RCAB’s motion to dismiss the counterclaim. The following also constitutes my findings of fact and rulings of law, pursuant to Mass.R.Civ.P. 52, after trial on the merits of RCAB’s complaint.
MOTIONS TO DISMISS
A. Defendants’ Motion to Dismiss for Lack of Jurisdiction Over the Subject Matter
Defendants, the group of certain former parishioners, move pursuant to Mass.R.Civ.P. 12(b)(1), to dismiss RCAB’s complaint on the ground that what is presented is an ecclesiastical dispute over which this court has no jurisdiction. Paper No. 21. Defendants contend that whether or not they may be found to be trespassers as a result of their around-the-clock protest vigil necessarily involves interpretation and application of canon law. In contrast, RCAB argues that the issue of trespass may be decided under neutral principles of civil law.
A plaintiff bears the burden of proving all jurisdictional facts. Williams v. Episcopal Diocese of Mass., 436 Mass. 574, 577 n.2 (2002). In deciding the issue, the court takes as true the pertinent allegations of the complaint, although it may also consider affidavits *678 and other matters outside the face of the complaint submitted by the moving party. Ginther v. Commissioner of Insurance, 427 Mass. 319, 322 n.6 (1998).
1. Facts for Motion to Dismiss
The essential facts for deciding defendants’ motion to dismiss are the following. The RCAB is a Massachusetts religious and charitable, non-profit corporation organized and existing under Chapter 506 of the Acts of 1897. The church at issue is located at 27-31 Hood Road in Scituate, Massachusetts. In approximately 1960, the then Archbishop of Boston, Richard Cardinal Cushing, created the St. Frances X. Cabrini Parish. The record owner of the land upon which the church is located is the RCAB. RCAB purchased the land upon which the church is located on May 19, 1960.
In May of 2004, the Archbishop of Boston, Cardinal Sean O’Malley, informed the pastor and parishioners of St. Frances X. Cabrini Parish that the parish was to be closed as part of a reconfiguration process within the archdiocese. A Decree of Suppression was issued on October 5, 2004, to be effective on October 29, 2004, that closed the operation of the parish. On October 26, 2004, defendants, and others acting in concert with them, commenced a protest vigil. The vigil consists of having one or more individuals participate in the vigil by staying inside the church at all times— 24 hours a day, 7 days a week. The vigil has continued, without interruption, to the present date.
In November 2004, certain of the defendants initiated a canonical appeal of the decision to close the parish within channels of the Roman Catholic church hierarchy. RCAB elected not to pursue a legal remedy to end the protest vigil during the pendency of the canonical appeal. According to the RCAB, the appeal has finally been decided by the Vatican’s highest court, the Apostolic Signatura, affirming the decision to close the parish. Certain defendants, on the other hand, contend that they are still pursuing an appeal through yet another canonical channel.[3] By letter dated July 29,2014, Cardinal Sean O’Malley asked defendants to end the vigil. By letter dated February 3, 2015, the RCAB notified defendants that they must vacate the church on or before March 9, 2015, or the RCAB would take civil recourse against them. This action was commenced on March 10, 2015.
In support of their motion to dismiss, defendants rely upon a portion of what they contend is canon law. They point to Canon 1214 which they say provides as follows: “By term church is understood a sacred building designated for divine worship to which the faithful have the right of entry for the exercise, especially the public exercise, of divine worship.” The source for defendants’ quotation of Canon 1214 is a Memorandum of Decision in a case from the Superior Court— Roman Catholic Bishop of Springfield v. Anop, Superior Court, Hampden County No. 2011-831, (Moriariy, J.) (February 3, 2012) (“Anop"). In Anop, the court referenced an affidavit submitted by an ordained priest and canon lawyer submitted in that case stating the content of Canon 1214. Anop, p. 6. No affidavit has been submitted in the present case regarding Canon 1214.[4] Because Canon 1214 was discussed in Anop, however, I will address it in this case.
2. Analysis
The essence of defendants’ argument for dismissal of this action is that the question of whether they may be viewed as trespassers necessarily involves interpretation and application of ecclesiastical principles. Because, under well established law, “disputes involving church ‘doctrine, canon law, polity, discipline, and ministerial relationships’ ” are beyond the court’s jurisdiction, Maffei, supra, at 243, quoting Williams, supra at 579, defendants say the action must be dismissed. Defendants rely on Anop where the court dismissed an action of trespass brought by the Bishop of Springfield against parishioners conducting a protest vigil.
I reject defendants’ argument and respectfully disagree with the decision of the court in Anop.[5] In my opinion, defendants’ argument conflates the issues of whether the parish may be closed (an ecclesiastical question) with whether an owner in control of property may determine when individuals may be on the property (a civil law question). Because the latter may be decided by the application of neutral principles of property law, this court may proceed to hear the facts and decide whether defendants’ vigil is a trespass and whether an injunction should issue.
The Supreme Judicial Court in Maffei held that a court has “jurisdiction over church property disputes if and to the extent, and only to the extent, that they are capable of resolution under ‘neutral principles of law’ — which the United States Supreme Court has defined as “well-established concepts of trust and property law familiar to lawyers and judges.’ ” Maffei, supra at 243-44, quoting Jones v. Wolf, 443 U.S. 595, 603 (1979). The Court recognized that “[t]he State has an obvious and legitimate interest in the peaceful resolution of property disputes, and in providing a civil forum where the ownership of church property can be determined conclusively.” Id. at 243, quoting Jones, 443 U.S. at 602. Accordingly, I must examine whether the present case can be decided on neutral principles of law without involving or relying upon canon law. For the reasons that follow, I find that the dispute is capable of resolution under neutral principles of law.
“One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally (a) enters land in the possession of the other, or causes a thing or a third person to do so, or (b) remains on the land, or (c) fails to remove from the land a thing which he is under a duty to remove.” Dilbert v. Hanover Ins. Co., 63 Mass.App.Ct. 327, 333 (2005), quoting from Restatement (Second) of Torts §158 (1965). See *679 also, Amaral v. Cuppels, 64 Mass.App.Ct. 85, 91 (2005), citing Restatement (Second) of Torts, §821D, comment d (1979); Nolan & Santorio, Tort Law, 37 Mass. Pract. Series §4.1 (3d ed. 2005). A trespasser is “a person who enters or remains upon land in the possession of another without a privilege to do so, created by the possessor’s consent or otherwise.” Gage v. Westfield, 26 Mass.App.Ct. 681, 695 n.8 (1988), rev. den., 404 Mass. 1103 (1989), quoting Restatement (Second) of Torts, §329 (1965). Defendants say they have a privilege, or even a right, to be on the property of the RCAB for two reasons, both of which they say raise ecclesiastical questions.
First, they assert that they possess an equitable ownership of the real estate based upon canon law.[6] For this argument, they rely on the photocopies of the 2005 affidavits referenced in footnote 4, supra. Even if those affidavits, submitted in another case and in a different context, are considered, well-established Massachusetts law affirms the court’s ability to decide the equitable ownership issue applying neutral principles of civil property law. Maffei, supra at 246-54 (rejecting parishioners’ arguments for constructive trust); Fortin v. Roman Catholic Bishop of Worcester, 416 Mass. 781, 788-90, cert. denied, 511 U.S. 1142 (1994) (rejecting claims of constructive and resulting trust by former parishioners of a closed parish); Corrigan v. Roman Catholic Archbishop of Boston, 72 Mass.App.Ct. 1117 (Rule 1:28 decision), 2008 WL 4266253 (2008) (considering claims by parishioners in a suppressed parish; dismissed for lack of standing); Saint Mark of Ephesus Orthodox Cathedral, Inc. v. Holy Orthodox Metropolis of Boston, Inc., Suffolk Superior Ct. No. 2012-3605, Memorandum of Decision, p. 9-10 (McIntyre, J.) (2014) (deciding questions of constructive trust alleged by former parishioners). Accordingly, defendants’ vague and inconsistent attempt to raise an ecclesiastical issue with respect to equitable ownership is rejected.
Next, in their reply memorandum in support of their motion to dismiss, defendants point to Canon 1214 and the Anop decision. In short, defendants contend that Canon 1214, stating that “(b]y term church is understood a sacred building... to which the faithful have the right of entiy for the exercise ... of divine worship,” means that they can stay around-the-clock in the church building for as long as they choose to do so.[7] I need not decide the scope, context or meaning of Canon 1214 (even assuming it is properly before the court). Indeed, I must not because to do so would involve the court in an ecclesiastical question.
There can be no dispute, however, that neutral principles of civil property law are capable of determining a property owner’s right to determine when individuals 'may be on the property. Defendants’ fundamental contention is that the parish should not be suppressed (an ecclesiastical issue), not that they have a right to enter the church building and stay around-the-clock. The vigil is a vehicle to protest the decisión to close the parish. It fails as’ an attempt to assert a cognizable property right. Like the assertion of an equitable ownership interest in Maffei, the claim to a right to be in the church building around-the-clock may be resolved by established concepts of civil property law.
As described in Maffei, supra at 243, civil courts must be available to provide a peaceful resolution to property disputes exactly like this one. The right to control access to one’s property invokes no ecclesiastic issue. An owner of property has a clear and unequivocal interest, supported by property law, to prevent uninvited and unsupervised persons from being inside the building. Such persons, upon appropriate notice to stay out of the building, are trespassers if they enter.
For these reasons, defendants’ motion to dismiss for lack of jurisdiction must be denied.
B. RCAB’s Motion to Dismiss Counterclaim
RCAB moves, pursuant to Mass.R.Civ.P. 12(b)(1) and (6), to dismiss the counterclaim asserted by defendants. In their counterclaim (Paper No. 16), defendants allege that if RCAB succeeds on its request for a declaratory judgment determining that defendants are trespassers, then “RCAB should pay damages to the Friends [Friends of St. Frances X. Cabrini, Inc.) of the total amount expended by the Friends toward the upkeep and maintenance of the Church, which is presently over $37,000.” ¶18. While the counterclaim does not articulate a legal ground for recovery (there is no “count” or “counts”), at oral argument counsel for defendants stated that the counterclaim is based upon an alleged implied contract and involves money expended during the course of the vigil.[8]
The counterclaim fails to allege an agreement between RCAB and defendants that would provide a basis for any claim by defendants.[9] Instead, defendants rely upon a theory of implied contract or quantum meruit. “The underlying basis for awarding quantum meruit damages in a quasi-contract case is unjust enrichment of one parly and unjust detriment to the other party.” Liss v. Studeny, 450 Mass. 473, 479-80 (2008), quoting Salamon v. Terra 394 Mass. 857, 859 (1985). The fact that an entity (such as RCAB) may have received a benefit is not sufficient to state a claim. ‘The injustice of the enrichment or detriment equates with the defeat of a person’s reasonable expectations.” Id. at 480. In other words, a party cannot create a claim for quantum meruit by bestowing a benefit on another when there is no basis for a reasonable expectation of compensation. As stated in Finard & Company, LLC v. Sitt Asset Management, 79 Mass.App.Ct. 226, 229 (2011), the elements of implied, or quasi, contract are (1) the claimant conferred a measurable benefit upon another entity; (2) the claimant reasonably expected compensation from the other; and (3) the entity accepted the benefit with the *680 knowledge, actual or chargeable, of the claimant’s reasonable expectation..
Here, defendants’ allegations in the counterclaim defeat their claim for quantum meruit. They state that throughout the church’s history, and continuing to the present, they “donate" funds to maintain the church. ¶7 (emphasis added). The counterclaim asserts no facts suggesting that defendants have or had an expectation to receive reimbursement from RCAB. Further, the counterclaim fails to assert any statement, inducement or promise by RCAB that would reasonably justify any expectation of reimbursement. Whatever was expended by defendants was a voluntary donation made knowing that RCAB had determined to suppress the parish.[10] Accordingly, defendants’ counterclaim fails to state a claim for implied contract or quantum meruit and must be dismissed. RCAB’s motion to dismiss the counterclaim is allowed.
C. Findings After Trial
Three issues were presented for the trial of RCAB’s complaint on May 5, 2015: (1) did RCAB prove its possession of the church; (2) are defendants presently on the premises of the church without the consent or authority of RCAB; and (3) did defendants prove the defense of laches so as to defeat RCAB’s request for equitable relief?
1. Possession
To bring a trespass action, a plaintiff must have actual or constructive possession of the property at the time of trespass. Attorney General v. Dime Savings Bank of New York, FSB, 413 Mass. 284, 288 (1992). “One is in ‘possession’ of land if he (1) is in occupancy with intent to control the property, (2) was formerly in occupancy with intent to control if no other person has obtained possession, or (3) has the right to immediate occupancy if no other person is in possession.” Alperin, Summary of Basic Law, 14C Mass. Pract. Series, §17.24 n. 11 (4th ed. 2014), quoting Restatement, 2d, Torts, §157.
It is uncontested that RCAB is the record holder of title to the real estate upon which the church is located. While defendants refused to stipulate to this conclusion, their own expert, Ms. Andrea Scott, submitted an affidavit conceding that RCAB is the record owner. At trial, RCAB called Mr. Gene J. Guimond as an expert witness. Mr. Guimond is an attorney who practices as a title examiner and is expert in real estate law. He testified that RCAB holds title to the property and that the title is registered land pursuant to G.L.c. 185. Documents evidencing the certification of title and the location of the land as being where the church sits were entered into evidence. His testimony was not challenged by defendants. Consequently, I find that RCAB is the owner of the property that includes the church.
“In the absence of adverse possession, seisin[11] follows the legal .title, and seisin in law carries with it the legal possession.” Farwell v. Rogers, 99 Mass. 33, 33 (1868). Proof of title “creates a prima facie case for the right to possession.” Nolan & Santorio, Tort Law, 37 Mass. Pract. Series §4.1 (3d ed. 2005), citing Kostopolos v. Pezzetti, 207 Mass. 277, 280 (1911). In addition, at trial, RCAB demonstrated its continued exercise of control over the church property by the testimony of RCAB property management witnesses. Throughout the relevant period, RCAB maintained the property by paying for utilities such as water, heat and electricity. RCAB paid for or performed services such as landscaping and maintenance, snow removal and repairs to the building. Starting in 2010, RCAB paid real estate taxes assessed on the church building by the Town of Scituate. RCAB, aware that the vigUers were present, posted a card to give them notice of the person at RCAB who should be called if a maintenance issue arose. At no time did RCAB ask defendants to pay anything for maintenance and repair. At no time did RCAB agree to reimburse defendants for amounts voluntarily expended for maintenance of the building.
Other than their claim to equitable ownership that was asserted in their 2005 lawsuit (and was dismissed), defendants assert no right to possession of the church property based upon cognizable civil law principles. As a result, I find that, based upon neutral principles of law, RCAB satisfies the first prong of the test for the right to equitable relief for trespass — it has actual possession of the property at the time of the trespass.
2. Intentional Entry on Property of Another
At trial, four named defendants testified. Each of them confirmed that he or she participates in the vigil. They also confirmed that their organization, Friends of St. Frances X. Cabrini, Inc., acts to coordinate other vigilers such that there is one of their number in the church at all times, around-the-clock. Presumably, this is a strategy to prevent RCAB from locking the church because the church could always be unlocked by the person inside for the next vigiler to come in. There is no doubt that defendants are intentionally entering, and staying, on the church properly.
Immediately after the vigil began in 2004, certain of the former parishioners initiated an appeal of the suppression decree, pursuant to canon law, within the hierarchical channels of the Roman Catholic church. According to RCAB’s verified complaint, RCAB “demonstrated significant pastoral restraint and patience towards the defendants, allowing them to hold vigil in the church while they pursued civil and canonical remedies, all with the good faith expectation that the defendants would abide by the decisions of the canonical authorities.” ¶30. The evidence at trial showed that RCAB representatives made it clear at all times that they wanted the vigil to end, but they tolerated the vigil by not seeking civil remedies while the canon *681 ical appeal progressed. In their testimony, defendants acknowledged that throughout the vigil, they knew that they were not authorized to be in the church. As expressed by defendant Jon Rogers, he knew that the protestors were living with the threat of arrest for trespassing since 2004. On July 29, 2014, the Archbishop of Boston, Cardinal Sean O’Malley, notified defendants that because the Apostolic Signatura had affirmed the decision to suppress the parish, he requested the vigil to end. On February 3, 2015, each of the defendants was served with notice from RCAB to vacate the church property on or before March 9, 2015. Defendants refused to comply with that demand and remain on the premises today.
Based on these facts, I find that RCAB satisfies the second prong of an action for trespass — defendants are intentionally entering and staying on RCAB’s property without permission, justification or excuse.
3. Laches
Laches is an affirmative defense to an action in equity.[12] “In general, laches on the part of the plaintiff is an unreasonable delay in instituting the action, which results in some injury or prejudice to the defendant.” Nolan & Santorio, Equitable Remedies, 31 Mass. Prac. Series §167 (2d ed. 1993). The burden of proof in asserting laches rests upon defendants. Id. Laches is an equitable defense and “[w]hat is just and equitable in cases of this sort depends very much upon the particular facts and circumstances disclosed.” Peters v. Archambault, 361 Mass. 91, 93 (1972).
Defendants’ argument for laches rests on the uncontested fact that RCAB knew of the vigil from the outset in 2004, yet refrained from taking action to end the vigil while defendants pursued their canonical appeal. For prejudice, they point to records of the Friends of St. Frances X. Cabrini, Inc. that show approximately $32,000 being spent for maintenance and repairs to the church from 2005 to 2015, as well as hours of labor by the vigilers to clean and maintain the church.
The flaw in defendants’ theory of laches is that it lacks any equitable basis. At all times from 2004 to date, defendants knew RCAB wanted them to leave the premises and to end the vigil. The “delay” by RCAB was merely the withholding of a physical or legal strike against defendants to enforce RCAB’s known rights. RCAB reasonably hoped that defendants would voluntarily end the vigil when the decision of the Apostolic Signatura came down affirming the decree of suppression. I find that the delay was in the interest of a peaceful and tolerant solution. Thus, the delay in commencing this action was not unreasonable.
Moreover, defendants fail to show any prejudice as a result of RCAB’s decision not to sue them until 2015. RCAB never misled defendants about its desire for the vigil to end. RCAB did not invite defendants to conduct the vigil. RCAB did not ask defendants to spend a dime for the maintenance and repair of the church building. To the contrary, RCAB made it clear that it was responsible for all utilities, taxes, upkeep and repairs. It was defendants’ voluntary decision to extend the vigil and to spend money on repairs. Defendants cannot by their voluntary conduct create their own prejudice. “[OJne, who openly defies known rights, in the absence of anything to mislead him or to indicate assent or abandonment of intent to oppose on the part of others, is not in a position to urge as a bar failure to take the most instant conceivable resort to the courts.” Blakeley v. Pilgrim Packing Co., 4 Mass.App.Ct. 19, 24 (1976), quoting Stewart v. Finkelstone, 206 Mass. 28, 36 (1910). Stated another way, defendants may not use the equitable principle of laches to obtain some kind of interest in the properly that would allow them to continue the protest vigil. Davenport v. Broadhurst, 10 Mass.App.Ct. 182, 187 (1980) (equitable principle of laches “may be used as a shield but not a sword”). In sum, defendants fail to carry their burden to prove laches.
ORDER
Defendants’ motion to dismiss the complaint for lack of jurisdiction is DENIED. RCAB’s motion to dismiss the counterclaim is ALLOWED.
A declaratory judgment shall enter, as requested by RCAB, declaring that defendants, and those individuals in active concert with them, are unlawfully and intentionally committing a trespass by the continuation of their protest vigil on the premises of the church. Because a party in possession of real estate is entitled to a permanent and mandatory injunction to bar the trespass, Peters, supra at 92 (landowner is entitled to mandatory injunction for trespass), Doody v. Spurr, 315 Mass. 129, 134 (1943) (injunction is appropriate remedy for repeated trespasses), Amaral, supra at 86 (error for the trial judge to deny injunction for continuing trespass), an injunction is required in this case. It is hereby ORDERED that defendants, and those acting in concert with them, are enjoined from entering the premises of the church. This order barring defendants from entering the premises of the church shall be effective fifteen days after the date of this Memorandum and Order for Judgment — May 29, 2015.

“Suppression" is a term of the Roman Catholic Code of Canon Law, which means to end the existence of a parish. Maffei v. Roman Catholic Archbishop of Boston, 449 Mass. 235, 236 n.3 (2007).

 Affidavit of Margaret O’Brien, submitted in opposition to the Motion for Preliminary Injunction, attaching copies of letters from Italian lawyers.

 In opposition to the motion for preliminary injunction, defendants submitted photocopies of two affidavits from ten years ago (May 2005) filed in the United States Bankruptcy Court for the Eastern District of Washington. The affidavits are from Bishop William S. Skyistad and Professor Nicholas *682 P. Cafardi. They were submitted to the court in the context of whether assets of parishes were available to satisfy a judgment against the archdiocese. The affidavits reference canon law and say it applies to all Roman Catholic institutions. Canon 1214, however, is not referenced, quoted or mentioned in the affidavits.

 Anop is also distinguishable from the facts of this case. In Anop, the court found that “it is not clear that the defendants lack the owner’s [the Bishop of Springfield’s] consent to remain on the property” because of the lack of proof of notice to vacate. Id. at p.8. The record indicated that the parishioners possessed a key to the church premises.

 It is noted that these defendants took a contrary position in their own lawsuit commenced against the RCAB in 2005. In that case they voluntarily submitted their claims for equitable ownership of the church to the civil court. At that time they did not, apparently, believe the court lacked jurisdiction or that adjudication of their claim for equitable ownership violated their First Amendment rights. Defendants’ action against the RCAB was dismissed and the dismissal was upheld on appeal. The Appeals Court, applying neutral principles of civil law, found that defendants lacked standing to assert equitable ownership. Rogers v. Roman Catholic Archbishop of Boston, 72 Mass.App.Ct. 1117 (Rule 1:28 decision), 2008 WL 4266850, further appeal denied, 452 Mass. 1109 (2008).

 Defendants suggest no ending date to their vigil. There is no representation that they will end the vigil even if their latest putative appeal is rejected. They do not contend that there is a canonical court available to deal with whether an around-the-clock vigil constitutes a trespass.

 To the extent that the counterclaim can be read to assert a claim of constructive trust, that claim is barred by principles of res judicata. That claim was asserted and fully litigated by these identical parties in 2005-2008. See footnote 6, supra.

 At the trial on the merits of RCAB’s complaint, the evidence demonstrated beyond dispute that RCAB did not agree to defendants expending money for the repair and maintenance of the church. RCAB made it clear that it was responsible for all repair and maintenance costs.

 At trial, it was learned that the expenditures were made against the express direction of RCAB to leave all costs for repair and maintenance to RCAB.

 “Seisin” is defined as “[p]ossession of a freehold estate in land; ownership.” BLACK’S LAW DICTIONARY (9th Ed. 2009).

 Defendants also asserted the affirmative defense of the three-year statute of limitations for an action in trespass. In my decision on the motion for preliminary injunction, I rejected the statute of limitations defense because the evidence demonstrates a continuing trespass. See Carpenter v. Texaco, 419 Mass. 581, 583 n.4 (1995) (a continuing trespass “based on recurring tortious or unlawful conduct” is not barred by the statute of limitations); Sixty-Eight Devonshire, Inc. v. Shapiro, 348 Mass. 177, 184 (1964) (continuedinvasion of property right defeats statute of limitations argument); Wishnewsky v. Saugus, 325 Mass. 191, 194 (1950) (each trespass constitutes a new cause of action). See also, Amaral, 64 Mass.App.Ct. at 88-91 (knowledge of trespass for years and attempt to reach an accommodation does not eliminate the actionable continuing trespass).