ANNIE G. RAMSEYER *vs.* ARTHUR J. CONLON.

Suffolk. April 5, 1939. — May 27, 1939.

Present: FIELD, C.J., DONAHUE, DOLAN, COX, & RONAN, JJ.

*Stockbroker. Interest. Gift.*

On facts found by a master, including a finding that a stockbroker exercised good faith and sound judgment in transactions for a customer, no liability on the part of the stockbroker toward the customer arose from the facts that, solicitous to aid the customer in retrieving losses, he carried an indebtedness of the customer for years without selling securities of the customer in his possession and then, after a heated discussion with the customer, sold them at a price less than what previously had been their market price.

Upon findings by a master, based on testimony of a stockbroker that he did not intend to charge his customer interest, the stockbroker was not entitled to have interest allowed him in proceedings against him by the customer for an accounting.

BILL IN EQUITY, filed in the Superior Court on June 29, 1937.

The final decree was entered by order of *O'Connell,* J.

*H. Snyder,* (*S. L. Bailen* with him,) for the plaintiff.

*E. O'Callaghan,* for the defendant.

RONAN, J.   This is a bill in equity for an accounting against the defendant, a stockbroker, arising from the purchase and sale of certain securities alleged to belong to the plaintiff.   The defendant admitted in his answer that he made certain purchases and sales for the plaintiff's account, and that he held the stocks so purchased as security for her debit balance.   He made a counterclaim that the plaintiff was indebted to him.   The case was referred to a master whose report was confirmed by an interlocutory decree, and a final decree was entered dismissing the bill and establishing the defendant's counterclaim in the amount of $203.55.   The plaintiff appealed from the interlocutory and final decrees.

The master's report discloses the following facts: The plaintiff, who was seventy-two years of age, was intelligent and keen.   She knew how to conduct a trading account. She had had a margin account before she dealt with the defendant and had experience in buying and selling securities.   In November, 1928, the parties settled their accounts and the plaintiff became the owner of two hundred shares of steel stock at a cost of $7,000, which she left in the possession of the defendant.   About a month or so later, he purchased, at her request, five hundred shares of a boat company at a cost of $6,850.   He purchased on her account in May, 1929, a few shares of telephone stock which he later sold at a loss.   Nothing in the present case turns on the purchase or sale of this stock.   The defendant sold the steel stock in June, 1930, to protect a debit balance then owed him by the plaintiff, which amounted to the principal sum of $9,345 but, by the sale of the steel stock, was reduced to $3,690.65.   The defendant in 1930 and 1931 was in need of funds and had to borrow money.   He called upon the plaintiff for more collateral but, with the exception of $200 paid by the plaintiff on May 24, 1931, she never made any payments during the period covered by the accounting, which began with the purchase of the steel stock

on November 23, 1928. The debit balance of the plaintiff was $3,490.65 during the period from 1931 to 1936, and after the sale of the telephone stock all the collateral against the account was the five hundred shares of the boat stock which at times was worth far less than the amount due. In June, 1930, this stock had a market value of only $750, but in 1936 its value had increased. A dividend amounting to $150 was turned over to the plaintiff by the defendant on December 24, 1936. The defendant requested a loan of $350 from the plaintiff and he sold fifty shares of the boat stock, sending her the proceeds amounting to $723.40. The plaintiff demanded an accounting in May, 1937, and on June 25, 1937, the defendant sold the remainder of the boat stock for $4,277.10 and credited the proceeds to her debit balance which, without interest, then amounted to $3,340.65. At no time did she give him any order to sell. The parties did not observe the usual business methods in conducting their transactions and, from 1929 to 1936, no statements of account were sent to her by the defendant. From 1931 to 1936 the plaintiff was unable to pay her indebtedness to the defendant. The master found that the defendant acted honorably and fairly; that he used his best judgment; that he did not sell the plaintiff's collateral when his own interest required that he should; and that he was anxious to help her to recover the losses that she had incurred.

One of the principal contentions of the plaintiff is that the steel stock was used to purchase the boat stock, that one stock was exchanged for the other and that she was therefore the sole owner of the boat stock. The master expressly found that the steel stock was used as collateral for the debit balance arising from the purchase of the boat stock, in accordance with the intention of the plaintiff. All the subsidiary findings relative to the acquisition, retention and sale of both the steel and boat stocks are consistent with each other and with the ultimate finding that the steel stock was used as collateral for the purchase of the boat stock. This finding of the master must stand. *Dodge v. Anna Jaques Hospital*, 301 Mass. 431.

There is nothing to the plaintiff's contention that the defendant is liable because he did not sell the boat stock at a time other than when he did and when its market value was higher, in view of the facts reported by the master. The indebtedness had for years far exceeded the value of the collateral and he could have sold the security, but he carried the account as he "was solicitous to aid in retrieving her losses." It was only after a heated discussion with the plaintiff in May, 1937, that he decided to sell the collateral and, as he acted in good faith and in the exercise of sound judgment, he did not thereby incur any liability to her. *White* v. *Macarelli*, 267 Mass. 596. *Johnston* v. *Cassidy*, 279 Mass. 593. *Cambridge Savings Bank* v. *Cronin*, 289 Mass. 379. *DesLauries* v. *Shea*, 300 Mass. 30.

The master attached two schedules to his report, one showing simple interest on the balances, using the transactions as rest periods, and the other computing interest each month and thus causing it to be compounded. If simple interest was properly chargeable then the defendant's counterclaim was established in the amount of $203.55 and, if the interest was reckoned monthly and became a part of the principal in the succeeding month, then his claim amounted to $472.21. The report discloses that the defendant did not intend to charge any interest until he changed his attitude toward the plaintiff as the result of their conference in May, 1937, when she first demanded her stock. The master found that, in accordance with the testimony of the defendant, he did not intend to charge her interest; that this was due to a sympathetic attitude toward her and to the condition of her account, and not to any prearrangement or understanding. The defendant is bound by his own testimony that he did not intend to charge interest until his controversy with the plaintiff in May, 1937. *Sullivan* v. *Boston Elevated Railway*, 224 Mass. 405, 406. *Griffin* v. *New York, New Haven & Hartford Railroad*, 279 Mass. 511, 514. Practically all of the period for which he now seeks to collect interest had passed and, there being no obligation upon the plaintiff to pay interest during the said period, the defendant

cannot transpose an executed gratuity into a legal liability to pay. Subsequent events might show that a hardship is imposed upon him if he is prevented on account of following the impulses of friendship, sympathy or generosity from collecting what would otherwise be due, but the rendition of services or the transfer of property accompanied by a donative intention fixes and establishes definitely and finally the rights of the parties and prevents a gift from ripening into a contract. The conclusion of the master that the defendant was entitled to simple interest was contrary to his subsidiary findings, and was wrong. The plaintiff's twenty-first exception to the report which was, in substance and effect, that the master should not have allowed interest must be sustained. *Cooper* v. *Cooper,* 147 Mass. 370. *Livingston* v. *Hammond,* 162 Mass. 375. *Johnson* v. *Kimball,* 172 Mass. 398. *Moore* v. *Elmer,* 180 Mass. 15. *Silano* v. *Carosella,* 272 Mass. 203.

If we consider the report as modified by sustaining this exception of the plaintiff, enough remains to enable us to cast the account between the parties. *Meehan* v. *North Adams Savings Bank,* 302 Mass. 357. *Walker* v. *E. William & Merrill C. Nutting, Inc.* 302 Mass. 535. Considering only the items dealing with principal, it is clear that, as the debits amount to $9,218.49 and the credits to $11,154.94, the defendant is indebted to the plaintiff in the sum of $1,936.45. The interlocutory decree is to be modified by sustaining the plaintiff's twenty-first exception to the master's report and by confirming the rest of the report; as so modified it is affirmed. The final decree is reversed, and a decree is to be entered ordering the defendant to pay the plaintiff $1,936.45 together with interest from June 29, 1937, the date of the filing of the bill, but without costs.

*Ordered accordingly.*