NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-14

KEHN FINE HOME BUILDING, INC.

vs.

SHANMUGAM MUTHIAN; MICHAEL KEHN, third-party defendant.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In 2016, defendant Shanmugam Muthian hired the plaintiff, Kehn Fine Home Building, Inc. (KFHB), to undertake a major renovation project at his home in Marblehead.  After the project was substantially but not totally completed, Muthian refused to pay KFHB for a large outstanding invoice and fired the company. KFHB brought the current collection action alleging breach of contract and related theories.  Muthian counterclaimed and brought a third-party action against Kehn's principal, Michael Kehn (Kehn).  After a nine-day jury-waived trial, a Superior Court judge ruled largely in favor of KFHB and Kehn (collectively, the Kehn parties), explaining his decision in comprehensive findings and rulings.  On July 12, 2021, two judgments entered that had the net effect of requiring that Muthian pay the Kehn parties approximately $100,000 in damages

(including prejudgment interest).  On August 18, 2021, another

judgment entered awarding attorney's fees to Muthian.[1]  After the

judge denied motions for reconsideration filed by each side,[2]

Muthian appealed, and the Kehn parties filed a limited cross

---

[1] On July 12, 2021, the judge entered final judgment on KFHB's claims, which required Muthian to pay KFHB $111,397.44 in damages ($90,544.53 in contractual damages, which included prejudgment interest from the date of the breach until the judgment at the contractual rate of eighteen percent per year, and $20,852.91 in quantum meruit damages, which included prejudgment interest from the date of the complaint until the judgment at the statutory rate of twelve percent per year). That same day, the judge entered a separate final judgment on Muthian's counterclaims and third-party claims that required KFHB to pay $11,376.45 in damages (including prejudgment interest), with Kehn jointly and severally liable to pay $2,687.74 of those damages (including prejudgment interest).  A third final judgment entered on August 18, 2021, requiring that the Kehn parties pay Muthian $2,500 in attorney's fees (strictly speaking, the third judgment, is phrased as awarding attorney's fees to the "plaintiff," although from the context it appears the judge intended the award in favor of Muthian, who is the plaintiff-in-counterclaim/third-party claim).  The parties make no argument about the third judgment on appeal.  The issuance of three separate judgments added unnecessary confusion to this case.  See Pantazis v. Mack Trucks, Inc., 92 Mass. App. Ct. 477, 478 n.4 (2017) ("We repeat our admonition that, unless [Mass. R. Civ. P. 54 (b)] is expressly invoked, there should never be more than one document identified as a final judgment in a civil case").

[2] On July 30, 2021, each side filed a motion for reconsideration. The judge denied them on August 10, 2021.  Meanwhile, Muthian had served, but not yet filed, what was styled as an amended version of his motion for reconsideration.  The day after the initial version was denied, Muthian filed the amended version. Treating the amended version as a "second" motion for reconsideration, the judge denied it on August 20, 2021.

appeal.[3]  We affirm the liability finding on KFHB's breach of

contract claim, but conclude that the damages award on that

claim was incorrect in one respect.  We also reverse so much of

the judgment as entered in favor of KFHB on its quantum meruit

claim.  We otherwise affirm.

A full recounting of the facts is unnecessary, and we refer

the reader to the extraordinarily detailed factual findings that

the trial judge issued.  Those findings exhibit the thoughtful,

careful, and balanced approach that the judge took with respect

to the testimony he heard from the at least seventeen witnesses.

On appeal, Muthian does not challenge the judge's subsidiary

findings as clearly erroneous (with the limited exceptions

discussed below), and, in any event, those findings appear well

supported by the trial record.  Nor is the thrust of Muthian's

argument that the judge applied the wrong legal principles.

Rather, he mainly argues that the judge misapplied the correct

law to the facts found.  For the most part, we disagree.

1.  Contract claims.  The judge found that Muthian

materially breached his contract with KFHB in January of 2018

when he refused to pay more than a nominal amount of what KFHB

was owed, and it is self-evident that Muthian's subsequent

_____

[3] Notwithstanding some ambiguities in the respective notices of
appeal, we treat the appeals as encompassing all three judgments
and the two orders denying the parties' motions for
reconsideration described in notes 1 and 2, supra.

firing of KFHB from the job also was a material breach.[4]  That

conclusion is well supported and correct.  We discern no error

in the judge's rejection of Muthian's argument that his actions

were justified by a prior material breach by KFHB.  To be sure,

the project at that point had not been completed within the

nine-month time frame set forth in the contract, but for reasons

the judge thoroughly explained, the contract read as a whole

does not support Muthian's view that the nine-month provision of

the contract established an unforgiving drop dead date.[5]  In

addition, the judge found that KFHB bore little responsibility

for causing delay,[6] and that, overall, Kehn was "exceptionally

---

[4] To be sure, KFHB made mistakes in invoicing.  After making
certain adjustments to account for mistakes that Muthian had
pointed out, KFHB on January 16, 2018, sent Muthian an invoice
for over $81,000 for the then completed work.  As the judge
found, the adjusted invoice was very close to the amount that
Muthian eventually was determined to owe on the contract after
the nine-day trial.  However, in response to KFHB's invoice,
Muthian offered to pay at most only $15,000, and even that offer
was subject to KFHB's agreeing to certain new conditions such as
forbearance from filing a mechanic's lien.  KFHB still kept
working to obtain an occupancy permit for Muthian and as soon as
it succeeded in that task, Muthian fired KFHB from the job.

[5] Muthian's argument is based on his taking out of context
certain isolated contractual language that on its face speaks of
the nine-month time frame in absolutist terms.  However, as the
judge pointed out, both directly before and after that language
is other language that absolves KFHB of delays outside its
control.

[6] The judge found that the largest sources of delay were outside
KFHB's control and responsibility.  For example, the project
unexpectedly needed approval from two local zoning bodies

4

patient" and accommodating with his exacting client.  Those findings are well supported by the trial evidence.

Granted, some problems remained at the time that Muthian fired KFHB or arose thereafter.  However, the judge found that KFHB would have fixed these issues had it not been fired.[7]

Muthian argues that KFHB is precluded from pursuing its contractual remedies because of the principle that a construction "contractor cannot recover on the contract itself without showing complete and strict performance of all its terms."  Andre v. Maguire, 305 Mass. 515, 516 (1940).  As the Supreme Judicial Court recently emphasized, the "need for strict compliance with construction law contracts [is] to ensure that the construction itself is done safely and correctly according to design specifications."  G4S Tech. LLC v. Massachusetts Tech. Park Corp., 479 Mass. 721, 731 (2018) (G4S Tech.).  Although the court in G4S Tech. reaffirmed that a contractor may not sue on the contract unless it can demonstrate complete and strict compliance, the court emphasized that this principle is limited to "breaches of the actual design and construction of the

_____

because of a setback encroachment.  Then, once it became clear that those approvals were needed, Muthian took the opportunity to significantly change his plans, which added layers of complexity to the project and additional delays.

[7] Two potential unexcused exceptions are discussed below in some detail.

5

project."  Id.  All other alleged breaches -- including allegedly delayed construction -- are subject to ordinary contract principles, including a "materiality standard."  Id. at 733 & n.16.

In the case before us, the "complete and strict performance" principle applies at most to any actual construction work that did not meet plans, specifications, or standards set forth in the contract.  See G4S Tech., 479 Mass. at 732 ("We clarify today that the complete and strict performance requirements in construction contracts apply only to the design and construction work itself").  But as we already have noted, to the extent that Muthian demonstrated that KFHB left behind unaddressed problems that left the project falling short of what the contract required, this was because Muthian unjustifiably fired KFHB before it had the opportunity to fix such issues.  We therefore agree with KFHB that the principle reaffirmed in G4S Tech. is inapplicable in this context.  Put differently, it cannot be that a client unilaterally gets to bar his or her contractor from suing on a construction contract by -- without adequate justification -- preventing the contractor from completely and strictly finishing the contract.

We pause to dive into the details regarding two specific disputes that played an outsized role in the conflict between the parties.  The first had to do with the finishing of the wood

6

floors.  Against Kehn's forceful warnings, Muthian insisted that the floors be finished using an unusual three-step manner in which a water-based dye would first be applied, followed by an oil-based stain, and then coats of water-based polyurethane. The uneven results proved the wisdom of Kehn's advice. Nevertheless, having agreed to use Muthian's preferred method (against his own better judgment), Kehn willingly had the floors redone a second time.  Problems remained.  Kehn still was willing to refinish the floors a third time, but only if Muthian agreed that he could use his more traditional tried and true two-step means of doing so.  Otherwise, Muthian would have to hire his own floor contractor to perform his chosen method. Muthian chose to pursue the latter route, although notably, once he fired KFHB, he ended up having the floor redone using the traditional method.  On appeal, Muthian argues that the failure of KFHB to complete the floor work stands as a bar to KFHB suing on the contract, and that, in any event, the judge erred by not deducting the cost of finishing the floors a third time from what KFHB was owed.  Given that KFHB already had finished the floors twice notwithstanding that the problems were due to Muthian's insistence on using his unproven methods against the advice of Kehn, we discern no error in the judge's handling of the floor issues.

7

The second detailed dispute that merits some discussion had to do with the energy efficiency of the heating, ventilation, and air conditioning (HVAC) system that was installed. The relevant subcontractor, whose testimony Muthian did not include in the record appendices, claimed that the installed system in fact could perform at the efficiency level that Muthian desired even though it was not nominally rated at that level. The judge's ruling that any shortcoming in the system did not constitute a material breach that justified KFHB's firing is well founded, particularly given that the energy efficiency of the system was never set forth as a required specification in the written contract. Where it is not clear how the dispute about the energy efficiency rating of the system would have played out had KFHB not been fired, we discern no error in the judge's declining to treat this issue as a bar to KFHB's suing on the contract.[8] We additionally note that even though the judge awarded damages based on a violation of an oral agreement to install the higher efficiency equipment, the judge recognized

---

[8] It bears noting that even if KFHB had been barred from suing on the contract, it could have pursued its damages on a theory of quasi contract. See G4S Tech., 479 Mass. at 735. Moreover, "[w]hile a party does not recover on the contract itself under quantum meruit, a court may look to the terms of the underlying contract to help determine appropriate recovery under quantum meruit." Liss v. Studeny, 450 Mass. 473, 480 (2008). Thus, even if Muthian were correct that KFHB was barred from suing on the contract, this would appear to have limited consequences.

the possibility that the HVAC system in fact might be able to achieve the desired efficiency level.

2. <u>Computation of contractual damages</u>. KFHB was not looking to be paid on the contract for any work it had not yet performed. Hence, in calculating what KFHB was owed, the judge ruled that Muthian was not entitled to a setoff for what he paid a different contractor to complete the job. At the same time, the judge ruled that Muthian was entitled to work needed to correct problems that remained after KFHB was fired.[9] Drawing a line between completion work and correction work was not easy in practice, and it was complicated by the fact that Muthian altered some aspects of the project even after KFHB was no longer in the picture. In addition, difficult accounting issues arose with regard to various items that KFHB was slated to purchase under the contract -- subject to specified allowances -- but that Muthian ended up purchasing himself.

The parties, and Muthian in particular, did little to assist the judge in sorting out these computational issues. Instead, as the judge observed in denying Muthian's second motion for reconsideration,

> "Muthian presented his damages argument in broad strokes, in effect asking to be awarded every dollar he spent on the project after KFHB's services were terminated (even if the

---

[9] For the reasons the judge explained, Muthian's argument that he was entitled to both completion work and corrective work is not persuasive.

9

work was done two years later), and failing to address at all what money, if any, KFHB was owed for work that it had done but for which it had yet to be paid."

As a result, the judge was, in his own words, "left largely on [his] own to try to fairly and sensibly resolve a myriad of damages issues and disputes about items large and inconsequentially small based on the applicable legal principles and [his] findings of fact." This required him to "put in inordinate time and energy to sort through complicated damages issues involving appropriate credits and offsets having to do with countless aspects of the project and to issue extensive and comprehensive findings and rulings." Having failed to raise the issues in a reasonable and timely manner at trial, Muthian instead put together in his postjudgment motions a "post-hoc litany of complaints about particular findings and damages determinations." The judge rejected all of Muthian's arguments, and -- having finally run out of patience -- he "decline[d] . . . to address them seriatim."

As the judge pointed out, Muthian failed to press several of his computational arguments until his first, or even second, motion for reconsideration. For example, in his first motion for reconsideration, Muthian requested that he receive credits for his purchase of wood flooring and of light switches. In denying that motion, the judge observed that Muthian had not previously specifically asked that adjustments be made on

10

account of those purchases.  Muthian has not demonstrated that this observation was wrong.  In fact, he did not put before us the record material that would be needed to establish that he had timely asserted these issues, such as a transcript of his closing argument and a copy of his proposed findings and rulings.[10]  Although we have no duty to examine parts of the appellate record not included in the record appendices, we have confirmed that Muthian never included the cost of purchasing the flooring or light switches among the specified credits he claimed in his proposed findings, which we retrieved from the electronic docket of the Superior Court.[11]  Under these circumstances, the judge did not abuse his discretion in deeming such arguments untimely and in denying Muthian's motions for reconsideration on that basis.  See generally Audubon Hill S. Condominium Ass'n v. Community Ass'n Underwriters of Am., Inc., 82 Mass. App. Ct. 461, 470 (2012) (denial of motion for reconsideration reviewed only for abuse of discretion).

---

[10] In his reply brief, Muthian has identified record citations to support his argument that he purchased various items for which additional adjustments should have been made.  However, for present purposes, the issue is not whether there existed record support for Muthian's arguments, but instead whether he timely raised such arguments with the judge.

[11] Similarly, these items were not listed in the chalk that Muthian produced at trial to summarize the credits he claimed.

11

Muthian did raise three arguments as to certain specific damages in a timely manner, and we are unpersuaded by two of them. His argument that he somehow was charged twice for KFHB's installation of the windows is simply unfounded. Similarly, Muthian has not demonstrated error in the judge's declining to award him more than the $2,004 credit that KFHB provided him for his forgoing plans to build a master bath deck.[12]

Muthian's remaining preserved computational argument has to do with how much credit was due for two pieces of ventilation equipment. KFHB gave Muthian credit for the cost of one of the "ERV" units ($1,500) but not the other. Muthian argued in his proposed findings and one of his motions for reconsideration that he was entitled to credit for both. The judge's reason for rejecting this argument is not clear. For its part, KFHB argues that providing Muthian only a partial credit can be justified because the labor costs of installing the chosen equipment,

_____

[12] At trial, Muthian argued, based on estimates he provided from other contractors, that the forgone work of building the master bath deck should be valued much higher. On appeal, he does not argue that the judge had to credit such testimony; instead, he argues that the judge erred by providing him credit for only $2,004 even though the judge found the deck work to be worth $3,000 (leaving a shortfall of $996). A close reading of the judge's findings together with the trial record reveals that the judge intended to accept the amount of the credit that KFHB already had provided Muthian for the forgone deck work, which an exhibit confirms was $2,004. The judge's passing reference to KFHB's having provided Muthian a $3,000 credit appears to be a mere transcription error, not an independent assessment of what the work was worth.

12

pursuant to Muthian's particular preferences, ended up being far greater than expected.  While this argument is not without some appeal, it ignores the fact that -- contrary to KFHB's contention at oral argument -- the contract included a general provision capping installation costs at ten percent with respect to the calculation of allowances that the contract provided.  Because KFHB has not offered a sufficient justification for why Muthian should not receive credit for the full amount ($3,000, less a ten percent amount for installation costs), we conclude that Muthian is entitled to an additional $1,200 credit, plus a pro rata share of the prejudgment interest.[13]

One additional computational argument that Muthian touches on in a footnote warrants mention.  But see Commonwealth v. Vick, 454 Mass. 418, 433 n.15 (2009) ("arguments relegated to a footnote do not rise to the level of appellate argument").  The issue has to do with the baseline figure the judge should have used with regard to what KFHB was owed under the contract before any adjustments were then made to account for corrective work that needed to be done or credits for which Muthian was due.  The judge accepted the invoiced figures that KFHB was claiming but then started with a baseline that was $7,392.31 higher than

---

[13] Interest on $1,200 at the contractual rate of eighteen percent per year (1.5 percent per month) for the period of time from the breach of contract through the entry of judgment (1,244 days) comes to $735.67, bringing the credit due Muthian to $1,935.67.

13

that. The extra increment appears to have related to certain additional charges included in change orders. The judge explained that he added this additional sum to what KFHB was claiming because he assumed that the failure to include this additional increment was "an oversight on the part of Kehn." Even though Muthian did not challenge the judge's assumption at trial or in either motion for reconsideration, he now argues that that additional sum was unjustified because the invoiced figures KFHB had put forward already took into account the relevant change orders. On this basis, Muthian now claims that the judge started with a baseline that was approximately $7,400 too high. Passing over whether Muthian has preserved this issue, we are unpersuaded that he has demonstrated clear error in the judge's calculation of the baseline.

In their cross appeal, the Kehn parties argue that the judge made seven specific computational errors in Muthian's favor. For example, KFHB argues that it should not be docked for the value of work spent by Muthian's replacement contractor to reassemble a so-called "wet bar," because even if such work was necessary to correct the faulty assembly of the wet bar, this was not work for which KFHB was responsible under the contract in the first place. As with many of Muthian's arguments, it appears that KFHB's arguments were not timely raised at trial (or at least that KFHB has not demonstrated that

14

they were by providing us the relevant record materials).  In fact, KFHB appears not to have raised any of its specific arguments until its own motion for reconsideration, and some of such arguments (such as certain costs with respect to the washer and dryer) were not raised until this appeal.  Therefore, the judge did not abuse his discretion in denying KFHB's motion for reconsideration.[14]

3.  Quantum meruit.  Muthian also challenges the award of quantum meruit damages for certain work that Kehn performed that was not contemplated by the contract.  That work had to do with bringing a staircase up to code and enclosing a porch.  At the point this additional work was done, Kehn did not seek to process change orders that would have required Muthian to make additional payments under the contract.  Rather, Kehn then was willing to perform the work without receiving additional compensation.  For example, with respect to the staircase work, Kehn explained at trial that:  "I didn't charge [Muthian] at

_____

[14] There is a threshold question whether the cross appeal was timely.  It was not filed within fourteen days of Muthian's appeal, or within thirty days of entry of the judgments being appealed.  See Mass. R. A. P. 4 (a) (1), as appearing in 481 Mass. 1606 (2019).  Accordingly, the timeliness of the cross appeal depends on whether the thirty-day period to appeal the July 12, 2021 judgments was tolled not just by the parties' initial motions for reconsideration, but also by Muthian's second such motion.  Because we conclude that the arguments raised in KFHB's motion for reconsideration (or later) were not timely raised in any event, we need not resolve the timeliness of the cross appeal.

15

that time for [the staircase] because I just felt like it was something that I felt proud of to do to this house. . . . I just wanted to do the right thing." However, once Muthian refused to pay KFHB under the contract and forced KFHB to bring suit to collect what it was owed, Kehn had a change of heart. Specifically, he sought compensation for the additional work under a theory of quasi contract.

Based on his evaluation of the equities at issue, the judge awarded KFHB $15,000 for the extra work -- less than one-half of what Kehn claimed the work was worth -- an award that, together with prejudgment interest, totaled $20,852.91. We are not unsympathetic to the judge's perspective about the equities, but based on his specific findings, we agree with Muthian that the judge was not free to award quantum meruit damages for the work that KFHB performed for free.[15] One of the required elements of

---

[15] To be clear, we do not accept Muthian's separate argument that KFHB cannot recover in quantum meruit on the grounds that its complaint sounded only in unjust enrichment. For one thing, while an argument can be made that these two quasi contract theories are conceptually distinct, many of the cases treat them as interchangeable. See, e.g., Liss, 450 Mass. at 479-480 (explaining that "[t]he underlying basis for awarding quantum meruit damages in a quasi-contract case is unjust enrichment of one party and unjust detriment to the other party" [citation omitted]). For another, the rules that govern pleadings simply are not as hypertechnical and strict as Muthian claims. Cf. Bullock v. Zeiders, 12 Mass. App. Ct. 634, 637-638 (1981) (motion to amend pleadings to conform to evidence may be made even after judgment).

16

quantum meruit is that "the claimant reasonably expected compensation from the defendant[]." Finard & Co., LLC v. Sitt Asset Mgt., 79 Mass. App. Ct. 226, 229 (2011). The judge himself expressly recognized that this element was not satisfied. As the cases have long recognized, someone who has rendered services or transferred property with a donative intent "cannot transpose an executed gratuity into a legal liability to pay." Ramseyer v. Conlon, 303 Mass. 270, 274 (1939) (party who did not intend to charge plaintiff interest on her securities until plaintiff demanded an accounting could not recover that interest).[16] Accordingly, Muthian is entitled to a reduction of $20,852.91 in the judgment against him.

4. Intentional or negligent misrepresentation. Muthian claimed that Kehn had misrepresented the size of his crew, and that this misrepresentation induced him to hire KFHB to his detriment. As to this issue, Muthian claims that the judge's findings are clearly erroneous. He argues in essence that the judge was required to accept his forceful testimony on these points, because it was not directly contradicted by Kehn. That is simply not a correct statement of law. See, e.g.,

---

[16] KFHB seeks to save its quantum meruit award by suggesting that its willingness to perform the additional work without additional compensation was conditioned on Muthian's continuing to pay what was due under the contract. While that argument has some appeal, the judge made no such finding.

17

Commonwealth v. Gordon, 87 Mass. App. Ct. 322, 328 n.10 (2015) ("The absence of a conflict in the evidence does not mean that the motion judge is required to credit the testimony"). Moreover, as the judge pointed out, the fact that the extensive written communications between the parties throughout the project included no complaints by Muthian about the size of KFHB's crew undercuts his claims on this point. In light of the fact that the judge was free not to credit Muthian's factual testimony regarding Kehn's representations about the size of the KFHB crew, there is no merit to Muthian's argument that the judge erred in rejecting his fraudulent inducement claims.

5. G. L. c. 142A and G. L. c. 93A violations. In addition to arguing that KFHB violated the contract and improperly induced him to enter the contract, Muthian alleged that the Kehn parties violated both G. L. c. 142A and G. L. c. 93A. In fact, the judge ruled in Muthian's favor with respect to these claims insofar as Muthian alleged two minor building code violations. For these claims, the judge awarded $2,687.74 total in damages (including prejudgment interest), plus $2,500 in attorney's fees. Having found no intentionality in the violations, the judge did not err in declining to award multiple damages. See Hyannis Anglers Club, Inc. v. Harris Warren Commercial Kitchens, LLC, 91 Mass. App. Ct. 555, 560-561 (2017) (multiple damages warranted only for conduct that constitutes a deliberate

18

violation of c. 93A).  To the extent that Muthian now contends that the judge erred by not finding additional violations of c. 142A (and derivatively of c. 93A), his argument fails on the facts.  Similarly, to the extent that Muthian claims that the Kehn parties violated c. 93A in other ways, his arguments also fail on the facts.[17]  For example, the judge's findings that the Kehn parties engaged in no untoward conduct to attain an unfair advantage over Muthian are well founded.  While it is true that Kehn on occasion made some accounting errors, the judge found that these were unintentional and quickly corrected.  For example, even Muthian testified that he thought he "caught [Kehn] off guard" with respect to the accounting error and that "[Kehn] corrected it once it was brought to his attention."

6.  <u>Ex parte contact with witness</u>.  Finally, we address the judge's relationship and ex parte meeting with a witness, Richard Baldacci.  Baldacci had been the building inspector for Marblehead during the relevant period.  Baldacci's testimony, as a fact witness, primarily went to the parties' efforts to obtain occupancy permits for the renovated home.  He appeared on both parties' pretrial witness lists.  The judge knew Baldacci personally, a fact he raised with counsel prior to the

---

[17] Because Muthian has not prevailed in this appeal with respect to his statutory claims, we deny his request for appellate attorney's fees.  See <u>Marengi</u> v. <u>6 Forest Rd. LLC</u>, 491 Mass. 19, 31-32 (2022).

19

commencement of trial. The judge even noted that he would be inclined to credit Baldacci's testimony. He asked both parties whether they had a problem with his sitting on the case, and neither party requested that the judge recuse himself. On the day that Baldacci testified, the judge in open court invited him to come back to his chambers during a break in the trial because he would "just like to say hello to [him] back here." Again, neither side objected. Nevertheless, Muthian now argues that the judge's meeting with Baldacci ex parte was so untoward that perhaps a new trial may be required.

Without endorsing the judge's decision to meet privately with a witness during the trial, we are unpersuaded that this action constitutes reversible error. First of all, Muthian has provided us no reason to question the judge's statement that he was meeting with the witness merely to "say hello" or otherwise catch up, not to discuss the case. Second, by his silence after previously indicating that the relationship between the judge and Baldacci did not present a problem, Muthian waived any objection to the contact. See Matter of Moore, 449 Mass. 1009, 1010 n.1 (2007) (issue of recusal waived where not raised until appellate briefs). Third, Muthian has not come close to demonstrating how he was prejudiced by the meeting. Baldacci, a government official, was a fact witness who was not aligned with either side. While his testimony was not unimportant, it was

20

hardly critical to the Kehn parties' prevailing.[18]  Muthian has

not articulated how the judge's meeting with Baldacci had any

appreciable impact on the judge's resolution of the case.  See

Perez v. Boston Hous. Auth., 379 Mass. 703, 741 (1980) (where ex

parte communications "unthinking rather than venal," and did not

"affect[] the substance of the proceedings one way or the

other," reversal not required).

Conclusion.  So much of the July 12, 2021 judgment as

entered in favor of KFHB on count two is reversed; so much of

that judgment as awarded damages on count one is vacated, and

the judgment is revised to order Muthian to pay KFHB $88,608.86

in contractual damages (including prejudgment interest through

the date of the original judgment);[19] in all other respects, that

judgment is affirmed.  As to the August 20, 2021 order denying

Muthian's second motion to reconsider, so much of the order as

pertains to the request for additional credit for the "ERV"

units is reversed; the order is otherwise affirmed.  The July

---

[18] Muthian places great emphasis on appeal, as he did at trial, on Baldacci's granting, and then revoking, a temporary occupancy permit.  That focus appears misplaced.  As the judge expressly found, the revocation of the temporary occupancy permit "was without practical consequence because the flooring situation kept Muthian from moving in at that time."

[19] This figure is the original amount awarded under KFHB's contract claim (including prejudgment interest), less the $1,935.67 adjustment Muthian is due with respect to the ERV credit.  See note 13, supra.

12, 2021 judgment entered in favor of Muthian, the August 18, 2021 judgment awarding attorney's fees, and the August 10, 2021 order denying the parties' motions for reconsideration are affirmed.

So ordered.

By the Court (Milkey, Massing & Henry, JJ.[20]),

*Joseph F. Stanton*

Clerk

Entered:  May 15, 2023.

---

[20] The panelists are listed in order of seniority.